UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALKEK & WILLIAMS LTD., and ALBERT AND MARGARET ALKEK FOUNDATION, | § § § § | |
| Plaintiffs, | § § | |
| v. | § | CIVIL ACTION NO. H-08-3501 |
| | § | |
| TUCKERBROOK ALTERNATIVE INVESTMENTS, LP, TUCKERBROOK/SB GLOBAL SPECIAL SITUATIONS GP, LLC, and TUCKERBROOK/SB GLOBAL SPECIAL SITUATIONS FUND, LP | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment. (Doc. No. 5.) For the following reasons, Defendants' Motion must be denied.

## I. BACKGROUND

Plaintiffs Alkek & Williams, LTD, and Albert and Margaret Alkek Foundation bring this action to address a disputed contract provision that they allege allows them to recover their capital accounts from a distressed asset investment vehicle. The vehicle, Tuckerbrook/SB Global Special Situations Fund, L.P. ("GSS"), a "fund of funds," was established in November 2007. (Pls. Compl. ¶ 8.) Defendant Tuckerbrook Alternative Investments, LP ("Tuckerbrook") serves as the investment adviser for GSS and is the managing member of Tuckerbrook/SB Global Special Situations Fund GP, LLC ("GSS GP"), the general partner of GSS. (*Id.* at ¶ 8.)

Tuckerbrook hired Sumanta Banerjee to launch and manage GSS. (*Id.* at ¶ 11.) Banerjee controlled GSS GP and allegedly was primarily responsible for the management of GSS's investment portfolio and critical to its success. (*Id.* at ¶ 12.) Pursuant to the Limited Partnership Agreement of GSS ("Agreement"), investors in the fund, like Plaintiffs, were given the automatic right to withdraw from GSS if Banerjee:

> dies, becomes incompetent or disabled (i.e., unable, by reason of disease illness or injury, to perform his functions as the managing member of the General Partner for 90 consecutive days), or ceases to be directly or indirectly involved in the activities of the General Partner. (Agreement § 5.03.)

(Compl. ¶ 12.)

In a letter dated March 2008 ("March Letter"), Tuckerbrook advised the limited partners that it had terminated its employment relationship with Banerjee. (*Id.* at ¶ 14.) Plaintiffs claim that this letter triggered the special withdrawal rights in Agreement § 5.03. (*Id.*) Plaintiffs then exercised their purported withdrawal rights in a letter dated April 25, 2008, to be effective May 31, 2008.[1] (*Id.* at ¶ 15.) Defendants have not acted on Plaintiffs' withdrawal notices and have continued to charge Plaintiffs management fees against their capital accounts. (*Id.* at ¶ 17.)

Plaintiffs now bring claims for breach of contract because Defendants purportedly failed to return Plaintiffs' capital accounts and charged them management fees after May 31, 2008. Plaintiffs also seek a declaratory judgment that they withdrew as limited partners effective May 31, 2008 and an accounting and special audit required by Plaintiffs' alleged exercise of their withdrawal rights. Plaintiffs pray for a full recovery of

---

[1] Plaintiffs claim that the Agreement allows any limited partner to exercise its withdrawal rights by giving notice within 30 days of learning of Banerjee's separation from GSS, effective at the end of the full calendar month after the notice date.

2

their capital accounts as of May 31, 2008, management fees, attorneys' fees, and costs. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although the Court generally considers a motion to dismiss for failure to state a claim based on the face of the Complaint, the Court may also take notice of matters of public record when considering a 12(b)(6) motion. *See Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994).

## III. THE CONTRACT

Defendants claim that the March Letter did not trigger Plaintiffs' withdrawal rights and that Plaintiffs' contentions are contradicted by the March Letter that explained that Banerjee would continue to be a managing member of the general partner entities for each of the funds, including the GSS GP. In addition, Defendants claim that the Agreement allows the general partner to suspend withdrawal rights. Defendants also contend that recent orders issued by a Massachusetts court established that Banerjee and

Tuckerbrook were 50 percent members and managing members of GSS GP during the period in question.[2] Finally, they argue that, because Tuckerbrook commenced dissolution on the fund on January 8, 2009, any termination or withdrawal is terminated by the Agreement. Defendants ask that the Court award costs because Plaintiffs' claims are frivolous and asserted in bad faith.

Plaintiffs respond that the March Letter, in which Tuckerbrook terminated Banerjee as an employee and as a portfolio manager of GSS, triggered their right to withdraw. They contend that Banerjee's titular position as a managing member of GSS GP does not mean that Banerjee had "direct involvement" in the activities of the general partner. Once he stopped serving as portfolio manager of GSS, they assert that he no longer participated in the primary activities of the GSS GP. *See* Agreement §§ 2.02, 2.04 (describing the authority of the general partner and its activities). At a Motion hearing, Plaintiffs asserted for the first time that Banerjee may have also ceased to be "indirectly involved" in GSS GP. The Court will therefore not address Plaintiffs' argument regarding the interpretation of § 5.03 that allows the withdrawal rights to be triggered if Banerjee is no longer directly involved with the activities of the general partner.

The March Letter reads: "Mr. Banerjee will no longer serve as portfolio manager [of GSS] .... Mr. Banerjee, however, will continue to be a managing member of the general partner entities for each of the Funds." (Doc. No. 6, Ex. B.) The Agreement allows Plaintiffs to withdraw if Banerjee "ceases to be directly or indirectly involved in the activities of the General Partner" or when one of several other events occur.[3] The phrase "involved in the activities" and verb "involve" are defined elsewhere in the

---

[2] *Tuckerbrook Alternative Investments, LP v. Sumanta Banerjee*, C.A. No. 08-10636-PBS (D. Mass. June 4, 2008).

[3] Neither party contends that Banerjee "die[d], [or became] incompetent or disabled." Agreement § 5.03.

4

Agreement. Therefore, their ordinary meanings must be used. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).[4]

In submissions requested by the Court, Plaintiffs now reurge their 56(f) request to pursue discovery because they contend that Tuckerbrook took actions to prevent Banerjee from being informed about the activities of the GSS GP and generally to exercise his authority as a co-managing member. FED. R. CIV. P. 56(f). Plaintiffs also contend that, based on communications with Plaintiffs prior to Banerjee's settlement with Tuckerbrook, Banerjee will testify that, after March 25, 2008, he was frozen out of the GSS GP's activities. For Defendants, John Hassett, Managing Principal of Tuckerbrook Alternative Investments, LP, testifies via affidavit that Banerjee remained involved in the activities of the GSS GP and that Banerjee continued to assert his view that he remained a 50 percent managing member of the GSS GP. Hassett highlights the Massachusetts litigation in which Banerjee indicated his position that he remained a 50 percent managing member. (Hassett Aff. ¶ 7.) Hassett also contends that, in March 2008, Banerjee wrote to Citizens Bank and, as 50 percent managing member of the GSS GP, directed Citizens to freeze Tuckerbrook's bank account. (Hassett Aff. ¶ 8.) In April 2008,[5] Mr. Seaman and Banerjee exchanged e-mails regarding one of the funds (but not necessarily the GSS) in which Seaman expressly asks for Mr. Banerjee's authorization to issue a capital call.[6] (Hassett Aff. ¶ 12.) In October 2008, Banerjee purportedly sent an e-

---

[4] The parties both cite Texas law on contract construction. The Agreement, however, specifies that Delaware law should apply (Agreement § 8.06). Delaware law, with regard to basic contract interpretation, is very similar to Texas law. *See, e.g. Lorillard Tobacco Co. v. American Legacy Foundation*, 903 A.2d 728, 739 (Del. 2006); *Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997); *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985).
[5] The affidavit lists 2009, but this appears to be a typo. (Doc. No. 19, Ex. G.)
[6] Hassett avers that this other fund was one for which "Mr. Banerjee was identically also 50% managing member ... This exchange again makes clear not only that Mr. Banerjee remained actively involved in the

5

mail to an employee at Tuckerbrook requesting and receiving an update on the status of the audited financial statements for the SB Global Distressed Fund. (Hassett Aff. ¶ 18, Ex. L.)

Pursuant to Rule 56(f) of the Federal Rules of Procedure, Plaintiffs move to allow more discovery given the early-filed Motions for Summary Judgment. The rule provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f); *Beattie v. Madison County School Dist.*, 254 F.3d 595, 605 (5th Cir. 2001). Rule 56(f) Motions are viewed favorably and liberally granted. *Id.* at 605 (internal citations omitted). The party must show (1) why it needs additional discovery and (2) how the discovery will create a genuine issue of material fact. *Six Flags, Inc. v. Westchester Surplus Lines, Inc.*, 565 F.3d 948, 963 (5th Cir. 2009); *Beattie*, 254 F.3d at 605. Once the party has demonstrated that diligent efforts to obtain the discovery have been unsuccessful, a 56(f) motion "should be granted almost as a matter of course." *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (internal citations omitted); *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 162 (5th Cir. 2006) (denying a Rule 56(f) motion because the summary judgment non-movant failed to diligently pursue the evidence within the time allotted for a previous continuance).

Here, Plaintiffs contend that documents already requested will indicate Banerjee's true involvement in the affairs of the GSS GP and that testimony by Banerjee will

---

activities of the general partners to the funds, including the Fund, but that the Plaintiffs, through Mr. Seaman, had actual knowledge of this fact." (Hassett Aff. ¶ 12.)

indicate that he had no role in the activities of the GSS GP after March 25, 2008. They aver that they requested an affidavit from Banerjee, but that he declined so as not to potentially breach the settlement agreement with Tuckerbrook. Moreover, Plaintiffs contend that, after deposing John Hassett, they will discover critical facts that may be relevant to the Court's inquiry. Specifically, Plaintiffs contend that Hassett omitted from his affidavit the fact that Banerjee sought sanctions against Tuckerbrook for Tuckerbrook's failure to comply with the open-records obligation set forth by the Massachusetts court.

Given the limited exposure of the Court to the facts of this case and its inability to determine, based on the affidavits submitted, whether Banerjee was involved with the activities of the GSS GP after the spring of 2008, the Court finds that more discovery is warranted. Plaintiffs contend that, consistent with Hassett's Affidavit, further discovery as specified above, will create a material fact issue as to whether Banerjee retained only nominal office-holding authority rather than involvement in the activities of the General Partner. They note that Hassett omitted facts that might suggest that Banerjee was prevented from exercising his authority to perform the activities of the GSS GP. Given the presumption in favor of granting Rule 56(f) Motions, the Court will exercise its discretion to grant Plaintiffs' Motion and deny Defendants' Motion without prejudice to refiling after further discovery. The discovery deadline in this case is September 30, 2009. Should the parties need more time, the Court will consider future joint requests for continuances, but considers the trial date of December 1, 2009 to be firm.

### C. Defendant's Other Arguments

#### 1. Suspension of Withdrawal Rights

7

Defendants contend that even if Plaintiffs' withdrawal rights were triggered as alleged, the GSS GP may suspend withdrawal rights:

> [D]uring the existence of any state of affairs as a result of which, in the opinion of the General Partner, disposal of investments by the Partnership would not be reasonably practicable or would be seriously prejudicial to the non-withdrawing partners... or during any period when the transfer of funds involved in the realization or acquisition of any investments cannot, in the opinion of the General Partner, be effected at normal rates of exchange.

Agreement § 5.08(b). Defendants contend that the GSS GP has absolute discretion to determine when withdrawal rights will be exercised until the underlying investments can be redeemed on favorable terms. At the recent Motion Hearing, Defendants contended that § 5.08(b) trumps § 5.03 such that Plaintiffs cannot "command withdrawal immediately from the illiquid investment." (May 12, 2009, Mot. Hr'g, at 11.) In addition, Defendants contended that § 5.03 might have been drafted in contemplation of a situation before the money was committed or when the funds were liquid. However, after this time, they argued, § 5.08 gives the Partnership the discretion to suspend withdrawal rights to protect the remaining limited partners. Plaintiffs respond that Defendants have not suspended withdrawal rights and, even if they did so, the suspension occurred after the Agreement was already breached and would have only put the Plaintiffs' election to withdraw on hold. Absent contentions that Defendants did suspend withdrawal rights, the Court does not find that Defendants' argument regarding § 5.08 disposes of Plaintiffs' claims. Moreover, § 5.03 does not specifically limit withdrawal to times at which the funds are liquid, and the Agreement specifically contemplates that the GSS GP "borrow funds and pledge Partnership assets when deemed appropriate by the General Partner, including for the purpose of making investments and meeting withdrawal requests which

would otherwise result in the premature liquidation of investments." Agreement § 2.02(m). The Court understands the General Partners' need to protect the assets of the remaining limited partners, but does not believe that § 5.08 terminates, as Defendants appear to suggest, rather that possibly suspends, Plaintiffs' withdrawal request.

### 2. Dissolution of the Partnership

Defendants also note that, in January 2009, Tuckerbrook commenced dissolution and sent notice to the limited partners. Consequently, any right to distribution or withdrawal is terminated by the Agreement. Agreement § 6.01 ("Upon a determination to dissolve the Partnership, withdrawal requests and distributions in respect of pending withdrawals may not be made.") Plaintiffs respond that subsequent efforts to dissolve the Partnership do not erase Defendants' breach of the Agreement for failure to promptly pay the withdrawal request in May 2008 with the remainder after a special audit. Consequently, they contend that, once they exercised their withdrawal rights, they became creditors and ceased to be partners. They contend they are entitled to the first distribution of the Partnership's assets. Defendants do not respond to this rejoinder. The Court finds Plaintiffs' argument more persuasive because, had Plaintiffs validly exercised their withdrawal rights, they would become partners who are creditors, and the dissolution section of the Agreement contemplates such partners. Agreement § 6.02.

### 3. Attorneys' Fees

Defendants contend that Plaintiffs' claims are knowingly frivolous and based on irrefutable evidence that Banerjee did not become dissociated or inactive with the funds until months after Plaintiffs allege he did. Moreover, Defendants contend that Plaintiffs allegations contradict the documents on which they rely. Defendants argue that, because

the Agreement obligates the limited partners to indemnify the GSS GP, Plaintiffs should bear the GSS GP's litigation expenses from defending this civil action. Agreement § 2.06. Plaintiffs respond that the Partnership must indemnify the GSS GP—that is, all partners. In addition, Plaintiffs question whether the acts and omissions were made in bad faith or constituted willful misconduct by the GSS GP. Agreement § 2.06. Given the Court's determination that more discovery is needed, the Court will not resolve this dispute at this time.

### IV. CONCLUSION

Defendants' Motion (Doc. No. 5), is **DISMISSED WITHOUT PREJUDICE** to allow the parties to pursue discovery.

**IT IS SO ORDERED.**

**SIGNED** this 29 day of June, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE