# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **ALKEK & WILLIAMS LTD., et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-08-3501** |
| | § | |
| **TUCKERBROOK ALTERNATIVE** | § | |
| **INVESTMENTS, LP, et al.** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiffs Alkek & Williams, LTD, and Albert and Margaret Alkek Foundation's Emergency Application for Temporary Restraining Order and Injunctive Relief (Doc. No. 78) and Amended Application for Injunctive Relief ("Motion") (Doc. No. 89). Plaintiffs seek to enjoin a Connecticut state court suit filed against them by Defendants Tuckerbrook Alternative Investments, LP ("Tuckerbrook"), Tuckerbrook/SB Global Special Situations GP, LLC ("GSS GP"), and Tuckerbrook/SB Global Special Situations Fund, L.P. ("GSS"). After the Emergency Application was filed, the parties agreed to postpone the hearing and the Court's consideration of the motion until Defendants filed an amended complaint in Connecticut. (Doc. No. 88). Therefore, the Court denies Plaintiffs' Emergency Application as moot. This Order thus focuses on Plaintiffs' Amended Application, which concerns Defendants' Amended Complaint in Connecticut state court and Plaintiffs' request for a permanent injunction. After considering the parties' arguments and the applicable law, the Court finds that Plaintiffs' Motion must be denied.

I.  **BACKGROUND**

A.  **Initial Case in this Court**

Plaintiffs brought their initial action in this Court to address a disputed contract provision that they alleged allowed them to recover their capital accounts from an investment fund specializing in distressed assets.  Defendant GSS, a "fund of funds," was established in November 2007.  Defendant Tuckerbrook serves as the investment adviser for GSS and the managing member of GSS GP, the general partner of GSS.

Tuckerbrook hired Sumanta Banerjee to launch and manage GSS.  Banerjee was the 50 percent owner of GSS GP, controlled GSS GP, and was primarily responsible for the management of GSS's investment portfolio. Pursuant to § 5.03 of the Limited Partnership Agreement of GSS ("Agreement"), investors in the fund, like Plaintiffs, were given the automatic right to withdraw from GSS if Banerjee:

> dies, becomes incompetent or disabled (i.e., unable, by reason of disease illness or injury, to perform his functions as the managing member of the General Partner for 90 consecutive days), or ceases to be directly or indirectly involved in the activities of the General Partner.

(Pls.' Am. Compl. ¶ 12 (citing Agreement § 5.03).)

In a letter dated March 25, 2008 ("March Letter"), Tuckerbrook advised the limited partners that it had terminated its employment relationship with Banerjee.  Plaintiffs claim that this letter triggered the special withdrawal rights in Agreement Section 5.03.  Plaintiffs then exercised their purported withdrawal rights in a letter dated April 25, 2008, to be effective May 31, 2008.[1]  Plaintiffs brought claims for breach of contract, because Defendants purportedly failed to return Plaintiffs' capital accounts and charged them management fees after May 31,

---

[1] According to Plaintiffs, the Agreement allowed any limited partner to exercise its withdrawal rights by giving notice within 30 days of learning of Banerjee's separation from GSS, effective at the end of the full calendar month after the notice date.

2008.  Plaintiffs sought a declaratory judgment that they withdrew as limited partners effective May 31, 2008, and an accounting and special audit required by Plaintiffs' alleged exercise of their withdrawal rights.  Additionally, Plaintiffs prayed for a full recovery of their capital accounts as of May 31, 2008, management fees, attorneys' fees, and costs.

Defendants asserted that Plaintiffs' Section 5.03 rights were not triggered by the March Letter.  The March Letter sent to Plaintiffs as well as the other GSS investors reads: "Mr. Banerjee will no longer serve as portfolio manager [of GSS] . . . . Mr. Banerjee, however, will continue to be a managing member of the general partner entities for each of the Funds." (Defs.' Summary Judgment Mot Ex. 2, Doc. No. 39-3.)  Two days after it was sent, Banerjee sent an email to GSS investors in response.  In that correspondence, Banerjee clarified to investors that he maintained a 50 percent interest in the general partnership of GSS (as well as several other investment funds), and that the other 50 percent member, Tuckerbrook, "[did] not have any authority to act on [the fund's] behalf without [Banerjee's] consent."  (*Id.*)  Banerjee, through his counsel, also sent a letter to counsel for GSS, informing it that Tuckerbroook had  improperly taken unilateral action in terminating GSS former counsel and hiring new counsel.  Banerjee, through counsel, also contacted Michael J. Liccar & Co., CPAs ("Liccar Co."), the administrator of GSS, instructing it not to pay fees of any kind to GSS and other funds without Banerjee's permission.   Banerjee also contacted Citizen Bank, instructing that it copy Banerjee on all future communications with GSS and the other funds in which he was involved.  It is also clear that Banerjee was communicating with outside entities about acquiring Tuckerbrook's interest in GSS, thereby allowing Banerjee to continue as the portfolio manager.  These communications suggest that, during the initial 30 days following the March Letter, Plaintiffs had every reason to believe that Banerjee maintained involvement in the general partnership of GSS.

3

### B.  This Court's Prior Rulings

This Court denied Defendants' original motion to dismiss, or, in the alternative, motion for summary judgment.  It was this Court's finding that additional discovery was required to determine whether Banerjee retained "only nominal office holding authority" over GSS such that Plaintiffs' Section 5.03 rights were triggered, or whether Banerjee was involved with the activities of the GSS GP after the spring of 2008.  (Doc. No.  23.)

Subsequently, the Court granted Defendants' second motion for summary judgment on all of Plaintiffs' claims, and declared Plaintiffs' invocation of withdrawal rights under Section 5.03 of the Limited Partnership Agreement ineffective.  (Doc. No 42; *Alkek & Williams Ltd. v. Tuckerbrook Alternative Investments, LP*, 695 F. Supp. 2d 508 (S.D. Tex. 2010).)  The Court agreed with Defendants that Banerjee maintained involvement in the general partnership and continued to exert his influence.  However, the Court denied Defendants' counterclaim for attorneys' fees.  The order provided, in relevant part:

> Defendants . . . argue that equity demands that this indemnification come solely from Plaintiffs' shares of GSS, because Plaintiffs' claims are frivolous and asserted in bad faith. (Defs. Mot. at 20.) Defendants maintain that the evidence demonstrates that not only did Plaintiffs know that  Tuckerbrook could not act unilaterally with regard to GSS, but that they fueled Banerjee's involvement by actively seeking out entities who could buy out Tuckerbrook's interest.
> While this Court acknowledges that the evidence strongly suggests that Plaintiffs were working with Banerjee in an attempt to re-involve him in GSS management, much of the evidence presented by Plaintiffs suggest that, during the period immediately following Banerjee's termination, they were receiving conflicting messages as to the extent of Banerjee's involvement. Defendants' evidence, as presented to this Court, irrefutably establishes that Banerjee was able to exert direct influence over management and administration of the fund, however it is not entirely clear that Plaintiffs were privy to the communications between Liccar Co., Tuckerbrook, and Banerjee during this time. As such, the Court cannot conclude that this lawsuit was brought in bad faith, or that it is appropriate to equitably allocate all of the costs to indemnify Defendants to Plaintiffs. Therefore, Defendants' counterclaim for attorneys' fees is denied, and the indemnification expenses will come from the entire GSS limited partnership, pursuant to Section 2.06 of the Agreement.

(Memorandum and Order, Doc. No. 42, at 15-16.)

Plaintiffs subsequently moved for reconsideration of that order and the Court's ruling on summary judgment.  Defendants asked that the court award attorneys' fees incurred in opposing the motion for reconsideration.  The Court denied this relief, stating:

> Although the Court held that Plaintiffs were not required to pay attorneys' fees incurred in litigating this case out of their share of GSS, Defendants now seek fees for the expenses incurred in opposing this Motion. Plaintiffs have presented evidence that was in their possession during summary judgment briefing, and which does nothing to alter the primary factual basis of this Court's summary judgment holding. The question of attorneys' fees is therefore a close one. Because awarding attorneys' fees will, however, lead to evidentiary hearings and appeals that would doubtless generate more attorneys' fees than are now at stake, the Court exercises its discretion to deny such an award.

(Memorandum and Order, Doc. No. 47, at 5-6.)

Defendants then moved for Rule 11 sanctions against Plaintiffs, stating that Plaintiffs' suit was frivolous and brought for improper purpose.  The Court denied the motion, finding that there was not "sufficiently strong evidence of bad faith or improper motive to warrant the relief sought."  (Order, Doc. No. 51, at 1.)  The order also incorporated the reasons set forth in the Court's previous orders on the motion for summary judgment and motion for reconsideration. (*Id.*)

### C.  The Connecticut Action

Defendants filed suit in Connecticut state court on August 19, 2011, and filed an amended complaint on November 8, 2011.  The Amended Complaint contains claims for (1) abuse of process, (2) vexatious litigation in violation of C.G.S. § 52-568, and (3) breach of Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110a et seq.  (Mot., Ex. 1, ¶¶ 56–72.)  Defendants request judgment "in an amount sufficient to compensate them for the

5

losses, plus multiple and/or punitive damages," and attorneys' fees, interest, and costs incurred

connection with the Connecticut action.

### D.  Present Motion for Injunctive Relief

Plaintiffs brought this Motion seeking to enjoin the Connecticut state court because

Defendants are "seeking to relitigate matters that have been determined by the Court in this case,

and asserting claims that should have been brought, if at all, in this case."  (Mot. at 1.)

## II.  LEGAL STANDARD

The Anti-Injunction Act provides that "[a] court of the United States may not grant an

injunction to stay proceedings in a State court except as expressly authorized by Act of Congress,

or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C.

§ 2283.  This statute was first enacted in 1793 as "a necessary concomitant of the Framers'

decision to authorize, and Congress' decision to implement, a dual system of federal and state

courts." *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 146 (1988).  "[T]he Act's core message

is one of respect for state courts."  *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011)

This case involves the relitigation exception, one of the three exceptions defined in the

Anti-Injunction act.  The relitigation exception "permits a federal court to enjoin a state

proceeding only in rare cases, when necessary to 'protect or effectuate [the federal court's]

judgments.'" *Smith*, 131 S. Ct. at 2373 (quoting 28 U.S.C. § 2283).  The parties present

conflicting views about the scope of this exception.

The parties' disagreement stems from confusion over whether the relitigation exception

allows injunctions based on res judicata "where the later state action involves claims that could

have been litigated, but were not actually litigated, in the prior federal action." *Parsons Steel v.

First Alabama Bank*, 474 U.S. 518, 526 n.4 (1986).  In *Parsons Steel*, the Supreme Court

expressly declined to consider this issue.  The Court's subsequent opinions about the relitigation exception have left this question open.  *See Smith*, 131 S. Ct. 2368; *Chick Kam Choo,* 486 U.S. 140.  In *Chick Kam Choo*, the Supreme Court recognized that the relitigation exception was "founded in the well-recognized concepts of res judicata and collateral estoppel," but is also "strict and narrow," requiring that "the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court."  *Chick Kam Choo*, 486 U.S. at 147–48.

As the Fifth Circuit noted, "there is disagreement amongst the circuits regarding the scope of the relitigation exception; and this circuit has given conflicting signals as to its position on the issue."  *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 408 n.12 (5th Cir. 2008).  Most circuits that have considered the issue strictly interpret *Chick Kam Choo*'s "actually litigated and decided" language, and find that the relitigation exception is more narrowly tailored than the doctrine of res judicata.  *Id*. (citing cases from the Second, Sixth, Eighth, and Eleventh Circuits).  Thus, these circuits find that "the exception only protects from relitigation matters actually decided, not matters that *could have been* brought and decided in previous federal litigation."  *Id.* (citing *Staffer v. Bouchard Transp. Co.*, 878 F.2d 638, 643–44 (2d Cir. 1989). The Ninth Circuit, on the other hand, expressly disagrees, and has held that the relitigation exception applies "whenever res judicata would bar relitigation of a claim."  *Western Sys., Inc. v. Ulloa,* 958 F.2d 864, 868 (9th Cir. 1992) (finding that limiting the exception to issues "'actually litigated' . . .  would in essence be to read res judicata entirely out of the relitigation exception").

In *Blanchard*, the court noted that the Fifth Circuit also originally endorsed a stricter interpretation of the "actually litigated" standard.  *Blanchard*, 553 F.3d at 408 n.12 (citing *Tex. Employers' Ins. Assoc. v. Jackson,* 862 F.2d 491, 501 (5th Cir. 1988) (en banc) (noting that an

injunction that rests on true res judicata "appears to be inconsistent with *Chick Kam Choo*'s admonishment that the relitigation exception 'is strict and narrow' so that only 'claims or issues which . . . actually have been decided' in the prior proceeding . . . are protectable thereunder")). However, the Fifth Circuit's position has "gravitated towards the Ninth Circuit's position by employing a transactional test in relitigation exception cases, asking whether the two claims are based on the same nucleus of operative fact." *Id.* (citing *New York Life Ins. Co. v. Gillispie,* 203 F.3d 384, 387 (5th Cir. 2000); *Assurance Co. of Am. v. Kirkland,* 312 F.3d 186, 189 n.8 (5th Cir. 2002)).  In determining whether the relitigation exception applies, the Fifth Circuit has employed the same four-part test used in res judicata: : "(1) parties in the later action must be identical to or in privity with the parties in the previous action; (2) judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits." *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 273 (5th Cir. 2009) (citing *Gillispie,* 203 F.3d at 387).  The preclusive effect of such a test "potentially extends beyond claims actually litigated to claims that could have been litigated." *Blanchard*, 553 F.3d at 408 n.12 (citations omitted).

In light of this "nebulous standard," the Fifth Circuit in *Blanchard* read the relitigation exception narrowly¸ and concluded that it was "not unequivocally clear" that the state court case raised issues already decided by the earlier federal court decision.  *Id.* at 409.  The Fifth Circuit stressed that "[t]he exception permits, but does not mandate, that federal courts enjoin duplicative state court proceedings," and that "even where allowed by the letter of the relitigation exception, [an injunction] remains permissive at the discretion of the federal court."  *Id.* at 407–08.  This discretion should be "exercised in the light of the historical reluctance of federal courts

to interfere with state judicial proceedings." *Id.* at 408.   Therefore, the *Blanchard* court felt that "[a]s the claims unfold, the state court will be in a better position to consider collateral estoppel and res judicata." *Id.* at 410.

Smith, the Supreme Court's recent decision on the relitigation exception, confirmed that courts should exercise caution in issuing injunctions, as "[d]eciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court." *Smith*, 131 S. Ct. at 2375. "[I]ssuing an injunction under the relitigation exception is resorting to heavy artillery.  For that reason, every benefit of the doubt goes toward the state court an injunction can issue only if preclusion is clear beyond peradventure." *Id.* at 2375–76 (footnote and citations omitted).  "[A]n injunction is not the only way to correct a state trial court's erroneous refusal to give preclusive effect to a federal judgment. . . . [T]he state appellate courts and ultimately [the Supreme] Court can review and reverse such a ruling." *Id.* at 2376 n.5 (citations and internal quotations omitted).

In *Smith*, the Supreme Court again focused on the "same issue" requirement, without clarifying whether claims that were not litigated in the initial federal lawsuit could fit this standard.  The Court reiterated its holding in *Chick Kam Choo* that "an essential prerequisite for applying the relitigation exception . . . is that the issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Smith*, 131 S. Ct. at 2376 (citing *Chick Kam Choo*, 486 U.S. at 148).  Like *Chick Kam Choo*, *Smith* held that "[b]ecause the legal standards in the two courts differed, the issues before the courts differed, and an injunction was unwarranted." *Id.* at 2377.  Courts must resolve this issue by looking not only to the text of the relevant provisions, but to how the state court interprets the provision at issue.  "If a State's procedural provision tracks the language of a Federal Rule, but a state court interprets that provision in a manner federal courts have not, then the state court is using a

different standard and thus deciding a different issue." *Id.* "Minor variations in the application of what is in essence the same legal standard do not defeat preclusion; but where . . . the State's courts 'would apply a significantly different . . . analysis,' the federal and state courts decide different issues." *Id.* at 2378 n.9 (quoting *Chick Kam Choo*, 486 U.S. at 149). The Court reiterated that "the federal court must resolve any uncertainty on that score by leaving the question of preclusion to the state courts." *Id.* at 2377.

## III.   ANALYSIS

### A.  Issue Preclusion/Collateral Estoppel

In the present case, Plaintiffs contend that the issues in the state court complaint were already litigated in this lawsuit, and that the Connecticut complaint represents Defendants' "four[th] bite[] at the apple." (Mot. at 2.) Plaintiffs believe that a finding of bad faith is "essential to recovery" on all of Defendants' Connecticut claims, and assert that this Court, in denying multiple requests for attorneys' fees and sanctions, already ruled that Plaintiffs did not file this lawsuit in bad faith. (Mot. at 9; *see also* Mot. at 6, 7.)

The Court does not believe that it is "clear beyond peradventure" that the Connecticut claims were already litigated in the two requests for attorneys' fees or the request for sanctions in this case. *Smith*, 131 S. Ct. at 2376. The legal standards applicable to each claim in federal and state court are not identical. In light of the Supreme Court's guidance in *Smith* and the Fifth Circuit's hesitation in *Blanchard*, it is appropriate for this Court to allow the Connecticut court to decide issues of collateral estoppel.

### 1.  Vexatious Litigation

In Connecticut, a plaintiff may bring a vexatious litigation claim against a party who filed a prior civil action against it. A plaintiff asserting a claim under C.G.S. § 52-568 must prove

want of probable cause and a termination of suit in its favor. *Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP,* 912 A.2d 1019, 1027 (Conn. 2007).  Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action. *Id.*  Malice is not an essential element, but will serve as a basis for higher damages. *Id.*  Plaintiffs believe that this standard is very similar to the legal standards used in this Court's determination of whether attorneys' fees or sanctions should be assessed, and therefore believe that this issue should be precluded under the collateral estoppel theory.

### a. Rule 11 Sanctions Order

Other courts have held that the denial of a Rule 11 motion does not foreclose assertion of a subsequent suit for malicious prosecution[2] under state law.  In *Amwest Mortgage Corp. v. Grady*, 925 F.2d 1162 (9th Cir. 1991), the Ninth Circuit, focusing on the limited nature of a Rule 11 proceeding, denied a motion under the relitigation exception that sought to enjoin a state malicious prosecution action on the grounds that the moving party had previously lost a Rule 11 motion. *Amwest*, 925 F.2d at 1164–65 ("[A]ssuming that elements of the Rule 11 test and a malicious prosecution action are identical, simply identifying an issue in one case as the same as that in another does not entitle a party to the benefits of injunctive relief. . . . [C]ollateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case.") (citing *Allen v. McCurry,* 449 U.S. 90, 95 (1980) (internal quotations omitted)).  It cited the district court's opinion with approval, which stated that "[m]otions for sanctions come in here a dime a dozen, and very often they're denied for a number of reasons other than the actual merits. Unless it is a clear-cut case of egregious behavior, I generally do not impose sanctions." *Id.* As the court concluded,

---

[2] In Connecticut, the title of "malicious prosecution" is only used after a prior criminal case.  Vexatious litigation is the equivalent claim for civil cases.

"[i]njunctive relief is particularly inappropriate if the district court's decision may possibly be based on grounds other than those asserted in the state court action." *Id.*

Similarly, in *Cohen v. Lupo*, 927 F.2d 363, 364 (8th Cir. 1991), *cert. denied*, 502 U.S. 861 (1991), the court found that the plaintiff's malicious prosecution claim "was not actually litigated" in a previous lawsuit where Rule 11 sanctions were imposed.   In ruling on the Rule 11 motion, "[t]he district court did not decide whether the *Bastien I* complaint was filed without probable cause, whether [plaintiffs] acted with malice, or the amount of damages [defendant] suffered as a result of [plaintiffs'] misconduct.  Those inquiries are irrelevant under Rule 11, but are the sum and substance of the tort of malicious prosecution."

Connecticut courts also have not equated the standards under vexatious litigation with the standards under Rule 11.  In *Senna v. Gottesdiener*, 1996 WL 176358, at *3 (Conn. Super. Mar. 29, 1996), the court, citing *Cohen*, held that a state rule analogous to Rule 11 did not constitute res judicata for vexatious litigation claim.[3]  The court "conclude[d] that Senna's vexatious litigation claims do not raise the same claim as the underlying action.  Senna's vexatious litigation claims have not been actually litigated, and they could not properly [have] been raised and determined in the underlying action." *Id.* (internal quotations omitted).   Additionally, in *Norse Systems, Inc. v. Tingley Systems, Inc.*, 715 A.2d 807, 816 (Conn. App. Ct. 1998), the Connecticut trial court "did not rule that the issue of probable cause was previously adjudicated in the [Federal] District Court" that ruled on a Rule 11 sanctions motion.  Rather, "the trial court merely identified the District Court's ruling as evidence of [the defendant's] reasonable belief that it had reasonable grounds for prosecuting" the previous claims in federal court. *Id.*

---

[3] The Court notes that *Cohen* and *Senna* involve res judicata, not collateral estoppel.  However, the analysis of both courts is instructive, as they analyzed the standards applicable to both Rule 11 and malicious prosecution and found that the district court did not "actually litigate" issues critical to finding liability for malicious prosecution. *Cohen*, 927 F.2d at 365; *Senna*, 1996 WL 176358, at *3.

While the standard for evaluating Rule 11 sanctions may be similar to Connecticut's determination of probable cause, the district court has discretion in ordering sanctions.  Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."); *see also* Advisory Committee's  Notes on 1993 Amendments to Fed. R. Civ. P. 11 ("The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances.")

In the present case, this Court did not explicitly make a probable cause determination, but found only that there was not "sufficiently strong evidence of bad faith or improper motive to warrant the relief sought."  (Order, Doc. No. 51, at 1.)  *See Snow v. WRS Group, Inc.*, 73 Fed. Appx. 2, at 9 (5th Cir. 2003) ("In deciding whether to enjoin the state court proceedings, the emphasis is on the record and what the initial court stated, not on the subsequent court's *post hoc* assessment of what the previous judgment intended to say." ) (citing *Chick Kam Choo,* 486 U.S. at 148).  Even if this can be considered a determination that Plaintiffs did not act in bad faith, probable cause and bad faith are not equivalent under Connecticut law.  *See Falls Church*, 912 A.2d at 1027 ("The want of probable cause, however, cannot be inferred from the fact that malice was proven.").  The Court finds that the decision about how much weight its Order should be given is properly left to the Connecticut state court, which can decide whether to give this Court's ruling preclusive effect or, as in *Norse*, merely treat it as evidence of probable cause. *See Norse*, 715 A.2d at 816.

### b.  Order on Motion for Reconsideration

The Court finds that nothing in its Order on Plaintiffs' Motion for Reconsideration can be interpreted as determining whether Plaintiffs lacked probable cause in filing its lawsuit against Defendants.  The Court "exercise[d] its discretion to deny" Defendants' request for attorneys' fees because of concerns over additional litigation over the amount of fees.  (Memorandum and Order, Doc. No. 47, at 6.)

### c.  Order on Motion for Summary Judgment

Plaintiffs contend that the standard for imposing attorneys' fees is the same standard used in deciding whether to award attorneys' fees, and cite various cases in support of their point. (*See* Mot. at 11.)  In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court noted that a court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  501 U.S. at 45–46.  In *Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995), the Fifth Circuit noted that "bad-faith fee-shifting punishes abuses of the litigation process."  59 F.3d at 1503.  However, both courts also noted that when no statute controls the provision of attorneys' fees, the court's power to impose attorney's fees is an "inherent power."  Defendants point out that a claim for attorney's fees is an "equitable claim, which by its nature did not have proscribed elements."  (Response at 7); *see also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257–59 (1975) ("[A] court may assess attorneys' fees for the willful disobedience of a court order . . . as part of the fine to be levied on the defendant, or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  (internal quotations and citations omitted)); *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1004 (5th Cir. 1995) ("Courts may depart from the general rule that each party pays his own attorney's fees in cases involving a common fund, situations where a party

14

has willfully violated a court order, and cases of fraudulent, groundless, oppressive, or vexatious conduct." (internal quotations and citations omitted)).

Defendants contend that the probable cause element of their Connecticut vexatious litigation claim should not be equated with the Court's determination that it "cannot conclude this lawsuit was brought in bad faith, or that it is appropriate to equitably allocate all of the costs to indemnify Defendants to Plaintiff." (Memorandum and Order, Doc. No. 42, at 16.) Plaintiffs urge that the Court's "finding of 'conflicting message[s] [received by Alkek] as to the extent of Banerjee's involvement,' went to whether Alkek filed the federal suit in bad faith *and* whether Alkek had 'probable cause' for that suit." (Reply at 6 (citing Memorandum and Order, Doc. No. 42, at 15–16).) However, the Court also made factual determinations that would support a finding of bad faith or lack of probable cause. (Memorandum and Order, Doc. No. 42, at 15 ("[M]uch of the evidence strongly suggests that Plaintiffs were working with Banerjee in an attempt to re-involve him in GSS management.")) The Court was not required to, and did not, make a probable cause determination explicit in its order; it merely determined that Plaintiffs' conduct did not merit attorneys' fees.

Plaintiffs urge the Court to grant an injunction because this Court is more familiar with the facts of this case. Plaintiffs wish to avoid the additional expense of briefing and discovery before a Connecticut judge decides the issues of collateral estoppel and res judicata. The Court is sensitive to these concerns; however, the Supreme Court and Fifth Circuit guidance is clear that the issues in the state court lawsuit must "actually have been decided by the federal court." *Chick Kam Choo*, 486 U.S. at 148. "The emphasis is on the record and what the initial court stated, not on the subsequent court's *post hoc* assessment of what the previous judgment intended to say." *Snow*, 73 Fed. Appx. at 9. Thus, although the initial court and the subsequent

court are one and the same in the present case, the Court cannot use its knowledge of the facts of this case to supplement and reinterpret its previous rulings.

### 2.  Abuse of Process

"The gravamen of [an abuse of process] complaint is the use of process for a purpose not justified by law."  *QSP, Inc. v. Aetna Casualty & Surety Co.*, 773 A.2d 906, 918 n.16 (Conn. 2001).  "The distinction between malicious prosecution or vexatious suit and abuse of process as tort actions is that in the former the wrongful act is the commencement of an action without legal justification, and in the latter it is in the subsequent proceedings, not in the issue of process but in its abuse."  *Id.*

In both their motion for summary judgment and their Rule 11 motion, Defendants asserted that they were entitled to fees and sanctions because the lawsuit was brought in bad faith, not for any subsequent abuse of process.  Therefore, the orders on these motions appear to be irrelevant in determining whether Plaintiffs committed an abuse of process through their actions after filing suit.  The closest that the Court came to considering any issues of abuse of process was in the Motion for Reconsideration, where Defendants requested fees incurred in responding to the motion.  The Court found the "question of attorneys' fees . . . a close one," because Plaintiffs "presented evidence that was in their possession during the summary judgment briefing, and which does nothing to alter the primary factual basis of this Court's summary judgment holding."  (Memorandum and Order, Doc. No. 47, at 5–6.)  This Order does not support Plaintiffs' argument that the Court has already determined that it did not act with bad faith; rather, this Court made a determination not to award fees in conjunction with this motion "[b]ecause awarding attorneys' fees will . . . lead to evidentiary hearings and appeals that would doubtless generate more attorneys' fees than are now at stake."  (*Id.* at 6.)  Thus, the Court does

not believe it is clear that the issues related to Plaintiffs' abuse of process claim were actually litigated, and the Court will not issue an injunction on this claim.

3.  **CUTPA**

In evaluating a claim under CUTPA, Connecticut courts look to the Federal Trade Commission's so-called cigarette rule:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other business persons.

*Blackwell v. Mahmood*, 992 A.2d 1219, 1229 (Conn. App. 2010) (citing *Ventres v. Goodspeed Airport, LLC*, 881 A.2d 937, 969 (Conn. 2005).  All three criteria do not need to be satisfied.  *Id.* "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three."  *Ventres*, 881 A.2d at 969.

Plaintiffs argue that this claim is clearly precluded by this Court's rulings because Connecticut courts "take into account whether there has been 'a pattern of bad faith conduct.'" (Mot. at 8 (citing *Landmark Inv. Group, LLC v. Chung Family Realty P'ship, LLC*, 10 A.3d 61, 83 (Conn. App. 2010)).)  Additionally, they note that the Federal Circuit, in interpreting a very similar state law, has equated the second prong with "bad faith [] conduct."  (*Id.* (citing *Taylor v. PPG Indus. Inc.*, 256 F.3d 1315, 1317 (Fed. Cir. 2001)).)  However, Defendants could establish that Plaintiffs' behavior violated another prong of the test.  As discussed in detail above, the standards for Rule 11 sanctions and attorneys' fees do not solely encompass a "bad faith" determination, and certainly do not require the Court to consider the additional factors associated with a CUTPA claim.  Because the standards are different, the Court finds that an injunction on this claim is not appropriate.

**B.  Claim Preclusion/Res Judicata**

Plaintiffs also argue that the abuse of process and CUTPA claims[4] are barred by the res judicata prong of the relitigation exception, as they are based on the "same claim or cause of action" and the "same nucleus of operative facts."  (Mot. at 16, 17 (citing *Gillispie*, 203 F.3d at 387).)   Plaintiffs assert that the Supreme Court made clear, in *Smith* and *Chick Kam Choo*, that both claim and issue preclusion apply when evaluating whether the relitigation exception is applicable.  While *Smith* stated that "the relitigation exception . . . is designed to implement well-recognized concepts of claim and issue preclusion," in the next breath it clarified that "in applying this exception, we have taken special care to keep it strict and narrow . . . ; an injunction can issue only if preclusion is clear beyond peradventure."  *Smith*, 131 S. Ct. at 2375–76.  The Supreme Court further clarified that it rested its *Smith* decision only on "the principles of issue preclusion."  *Id.* at 2376 n.7.

Additionally, Plaintiffs state that "[t]he Fifth Circuit . . . has refused to read *Chick Kam Choo* as requiring actual litigation of a claim where the relitigation exception is based on res judicata rather than collateral estoppel.  (Reply at 4 (citing *Vasquez v. Bridgestone/Firestone*, 325 F.3d 665 (5th Cir. 2003)).)  However, the Court finds that the Fifth Circuit cases cited by Plaintiffs do not support their broad view of res judicata under the relitigation exception.  Although the Fifth Circuit has sometimes indicated that it is employing the broad res judicata test in order to determine whether an injunction is appropriate, even in those cases it has limited its

---

[4] Plaintiffs do not argue that the vexatious litigation claim is barred by res judicata, as vexatious litigation claims must be brought in a subsequent lawsuit.  Additionally, Defendants respond that, since vexatious litigation can be the basis for a CUTPA violation, the CUTPA claims also should not be barred by res judicata.  (Resp. at 11–12.)  Plaintiffs does not challenge this assertion in its Reply, but merely argues that the vexatious litigation claims are also barred by collateral estoppel.  (Reply at 8.)  Therefore, Plaintiffs appear to be arguing only that the abuse of process claim is barred by res judicata.  Ultimately, because the Court finds Plaintiffs' assertion of res judicata under the antilitigation exception to be too broad to comply with precedent, the particular claims Plaintiffs believes are barred is unimportant to this Court's ruling.

issuance of injunctions to situations where it was clear that the underlying issues clearly were "actually litigated" in accordance with *Chick Kam Choo*.

In *Gillispie*, although the court held that res judicata barred a claim that was not brought in the initial federal suit, it did so on a narrow basis; plaintiff could "only win her . . . state suit by convincing the state court that the . . . federal judgment was in error." *Gillispie*, 203 F.3d at 387. The Fifth Circuit stated that the relevant question not "whether the same *evidence* has been presented in support of the two claims, but rather . . . *whether the same key facts are at issue in both of them.*" *Gillispie*, 203 F.3d at 387 (emphasis in original). The court found that there was one key fact at issue that was the same across both lawsuits—whether the decedent's death was the result of a suicide or an accident—and that issue was decided on summary judgment in the federal case. *Id.* At least one court has refused to enjoin a state court under *Gillispie* where "it does not appear that the State can win its state court lawsuits only if it convinces the Chancery Court that any prior federal judgments entered in this cause are in error." *Lipscomb v. Columbus Mun. Separate School Dist.*, 191 F.Supp.2d 736, 741–42 (N.D. Miss. 2002). *See also Modelist v. Miller*, 2011 WL 3823615, at *2 (5th Cir. Aug. 30, 2011) (citing *Gillispie* for the proposition that "a party could only win her state suit by convincing the state court that the earlier federal judgment was in error, and this constituted exactly the type of claim barred by the doctrine of res judicata").

In support of their argument for a broad application of res judicata, Plaintiffs also cite *Vines v. University of Louisiana at Monroe*, 398 F.3d 700, 709–10 (5th Cir. 2005). However, the state and federal suits "involve[d] claims that arise out of precisely the same set of facts[] [and] raise[d] the same issues." *Id.* at 710. The claim in state court was essentially the state counterpart to the plaintiffs' age discrimination claim that was already adjudicated in federal

court.  Additionally, the issue in *Vines* was "whether, even if the state court mistakenly rejected ULM's res judicata claim, a federal court injunction is permitted against enforcement of the state court judgment."  *Vines*, 398 F.3d at 705.  Because the state appellate court had already reversed and remanded the trial court's finding of res judicata, and both the request for an en banc hearing and writ to the state supreme court were denied, *Vines* also presented a more acute issue for the federal court in protecting its own judgment.  *See Smith*, 131 S. Ct. at 2376 n.5.

Similarly, in *Vasquez*, the fifth circuit vacated the district court's injunction prohibiting "any suit or cause of action against defendants in any Texas state or federal court."  *Vasquez*, 325 F.3d at 676.  It allowed the district court to enjoin only state court relitigation of a choice of law determination, which was a matter of collateral estoppel.  *Id.* at 680.  Because this injunction would require a finding that state law claims were "actually adjudicated" under *Chick Kam Choo*, the Fifth Circuit was careful to limit its applicability only to the plaintiffs of the federal court suit and those in privity.  *Id.*

The Fifth Circuit, in *Blanchard*, found that the relitigation exception standard was "nebulous."  The court did not analyze the claims under the four-part res judicata test that the Fifth Circuit used in previous cases, and declined to issue an injunction.   Since *Blanchard* was decided, the Fifth Circuit has restated its previous position that the relevant standard of the relitigation exception is the res judicata test.  *See Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 273 (5th Cir. 2009) (citing *Gillispie,* 203 F.3d at 387).  In *Moore*, however, the court found that the issue before the state court was identical to the issue decided by the federal district court—a declaration regarding the legality of the defendant's conversion to a new homeowner policy form.  *Id.* at 272.  The court did need to consider whether to enjoin claims that were not, but could have been, litigated.

Plaintiffs have presented no relevant cases, and the Court knows of none, that apply the relitigation exception to claims in state court that differ so completely from those at issue in the federal lawsuit.  Although the Fifth Circuit has utilized broad language in articulating the standard under the relitigation exception, its application of this standard has been cabined and used to enjoin only claims presenting almost identical factual and/or legal issues.  The narrow application of this standard makes sense in light of *Smith*; if federal courts strictly applied the res judicata standard as a test for invoking the relitigation exception, they would always be "dictat[ing] to other courts the preclusion consequences of [their] own judgment[s]" rather than saving this extreme measure for situations where preclusion is clear.  *Smith*, 131 S. Ct. at 2375–76.

Unlike the cases cited by Plaintiffs, Defendants do not seek to relitigate the same claims or the nearly identical state counterpart to those claims.   Additionally, other courts, including a court in Connecticut, have rejected similar res judicata claims.  *See* Part III.A.1.a, *supra* (discussing *Cohen*, 927 F.2d 363 and *Senna*, 1996 WL 176358).  Plaintiffs have not provided any argument showing that these claims were clearly compulsory counterclaims in the federal court action.  Therefore, the Court declines to determine whether the Connecticut claims would be barred by res judicata, instead leaving that issue to be determined by the Connecticut court.[5]

Alternatively, if Plaintiffs are correct that Supreme Court and Fifth Circuit jurisprudence allow for an injunction in this scenario, the Court finds that it is appropriate to exercise its discretion in this case.  The Fifth Circuit has stated that "[t]he exception permits, but does not mandate, that federal courts enjoin duplicative state court proceedings," and that "even where allowed by the letter of the relitigation exception, [an injunction] remains permissive at the

---

[5] Because the Court has determined that an injunction is not appropriate, it also declines to consider Defendants' additional argument that res judicata does not bar the Connecticut claims against individual defendant Scott Seaman, who was not a party to this suit.

discretion of the federal court." *Blanchard 1986*, 553 F.3d at 407-08.  As in *Blanchard*, it is "not unequivocally clear" that the state court case raises issues already decided by the earlier federal court decision.   In light of the concerns inherent in interfering in state court actions, especially where the relevant standards are so dissimilar, the Court refrains from enjoining these claims.

The Court wishes to clarify that in denying Plaintiffs' motion for injunctive relief, it makes no determination about the ultimate outcome of Plaintiffs' collateral estoppel and res judicata arguments.  Both parties will have an opportunity to present these arguments in the Connecticut lawsuit.

## IV. CONCLUSION

For the reasons discussed in this order, Plaintiffs' Amended Application for Injunctive Relief (Doc. No. 89) is **DENIED**.


**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 3rd day of January, 2012.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE