```
 1                  UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF TEXAS
 2                      HOUSTON DIVISION

 3

 4   ALKEK & WILLIAMS, LTD.       *     08-CV-3501
                                  *     Houston, Texas
 5   VS.                          *
                                  *     December 20, 2011
 6   ALBERT AND MARGARET ALKEK    *     11:57 a.m.
     FOUNDATION, ET AL
 7

 8                          HEARING

 9

            BEFORE THE HONORABLE KEITH P. ELLISON
10               UNITED STATES DISTRICT JUDGE

11
     APPEARANCES:
12
     FOR THE PLAINTIFF:
13   Penelope Elizabeth Nicholson and Maria Yeates
     VINSON & ELKINS
14   1001 Fannin, Suite 2500
     Houston, Texas 77002
15   713.758.1096

16
     And
17

18   Murray J. Fogler
     BECK, REDDEN & SECREST
19   1221 McKinney, Suite 4500
     Houston,Texas 77010
20   713.951.6235

21
     FOR DEFENDANT TUCKERBROOK ALETERNATIVE INVESTMENTS, LP:
22   Sean T. Carnathan
     O'CONNOR, CARNATHAN & MACK, LLC
23   8 New England Executive Park
     Suite 310
24   Burlington, Massachusetts 01803
     781.359.9001
25
```

1 Court Reporter:
  Johnny C. Sanchez, RPR, RMR, CRR
2 515 Rusk, #8016
  Houston, Texas 77002
3 713.250.5581

4 Proceedings recorded by mechanical stenography.  Transcript
  produced by computer-assisted transcription.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  We'll turn to Alkek & Williams

2  versus Tuckerbrook.  We'll take appearances of counsel,

3  starting with the plaintiff.

4          MS. YEATES:  Your Honor, Marie Yeates for the

10:56:17   5  Alkek plaintiffs.

6          THE COURT:  Thank you.

7          MS. YEATES:  I'm here my partner, Penny

8  Nicholson; Penelope Harris; and Mr. Fogler, Murray Fogler.

9          THE COURT:  Welcome to all of you.  We'll put

10:56:25  10  the mike over near you.

11              Yes, sir.

12          MR. CARNATHAN:  Good morning, Your Honor.  Sean

13  Carnathan for Tukerbrook Alternative Investments and the

14  GSS funds and the GS Situations.

10:56:34  15          THE COURT:  Okay.  Yes, I've read the briefs.

16  And what we're talking about now is a permanent injunction,

17  not a temporary injunction, right?

18          MS. YEATES:  That's correct, Your Honor.

19          THE COURT:  Okay.  I'm familiar with the

10:56:42  20  writings.  Would anybody like to make a short statement?

21          MS. YEATES:  I would, Your Honor.

22          THE COURT:  Okay.  Very well.

23          MS. YEATES:  At the podium?

24          THE COURT:  You can sit or you can stand.  It

10:56:52  25  doesn't matter, just as long as you're speaking near a

1  mike.

2              MS. YEATES:  Your Honor, because we are seeking

3  a permanent injunction, we did mark by agreement of the

4  parties the Connecticut amended complaint and the motion

10:57:06  5  for leave to file in Connecticut that was filed by the

6  Tuckerbrook entities.  And that's marked Plaintiffs'

7  Exhibit 1 to this hearing.

8              THE COURT:  Thank you.

9              MS. YEATES:  All right.  Your Honor, you know

10:57:15  10  that by stipulation the parties agree to put off the

11  October hearing?

12              THE COURT:  Yes, I remember that.

13              MS. YEATES:  And part of the stipulation was to

14  give the Tuckerbrook entities three more weeks, in the face

10:57:27  15  of our pleadings of collateral estoppel, res judicata,

16  three more weeks to replead in Connecticut, which they've

17  now done.  And we believe that it's now demonstrated beyond

18  per adventure that their claims, all of their claims in

19  Connecticut, would be barred by collateral estoppel, all of

10:57:44  20  them by collateral estoppel, but also by res judicata.  And

21  that's the basis, Your Honor, of our application to you

22  under the All Writs Act and under the relitigation

23  exception of the anti-injunction --

24              THE COURT:  Yes.  Ms. Yeates, help me

10:57:57  25  understand, this was not a particularly unusual case.  We

1  didn't have to go to trial.  Why are we still arguing about

2  these things so much later?  I must be missing a personal

3  dimension or something.

4              MS. YEATES:  That's a really good question,

10:58:12  5  Your Honor.  Because we believe that Your Honor having

6  ruled three times, not once, but three times, on whether

7  the Alkek entities brought the federal suit in bad faith,

8  that that should have disposed of the matter, but,

9  unfortunately, despite Your Honor's rulings, the

10:58:26  10  plaintiffs -- and despite the fact that you know they were

11  originally going to appeal Your Honor's ruling to the Fifth

12  Circuit and they dropped their appeal on the Fifth Circuit,

13  they now have gone back to their home forum in Connecticut

14  and filed this lawsuit, and my clients, which are

10:58:40  15  charitable civic organizations, are trying to avoid the

16  expense of going and litigating in Connecticut before a

17  Connecticut judge who will not be near as familiar with

18  this case as Your Honor is.

19              And you know under the relitigation

10:58:54  20  exception, often it's a different federal judge who is

21  being asked to enjoin based on a record from another

22  federal judge.  And here we're fortunate enough to be in

23  front of the same federal judge.

24              So one of the two things is going to happen

10:59:08  25  in Connecticut, Your Honor:  Either a Connecticut judge is

1 going to rule at the front end of that litigation, which

2 means he's not going to -- he or she is not going to be as

3 near as familiar with the case as you are, or he or she is

4 going to require discovery, which means that my client is

10:59:20  5 going to be put to all this expense to go litigate in

6 Connecticut, something that we feel should not have been

7 brought, and we believe smacks of the kind of judicial

8 hopscotch that the Fifth Circuit found in the Vasquez case

9 was the basis of the relitigation injunction in that case.

10:59:36  10           THE COURT:  Ms. Yeates, I'm going to ask you to

11 slow down just a little bit.  It's a problem that we always

12 have in this courtroom.  I'm the biggest offender, but --

13 so --

14           MS. YEATES:  I'll go slow.

10:59:48  15           THE COURT:  -- I need to tell everybody that.

16 Carry on.

17           MS. YEATES:  Thank you, Your Honor.  And as

18 Your Honor knows, there's two prongs to the relitigation

19 exception:  The collateral estoppel prong and the

10:59:56  20 relitigation -- I'm sorry -- the res judicata prong.  And

21 all the cases talk in terms of these two prongs, including

22 the two most recent U.S. Supreme Court cases:  Chick Kam

23 Choo, and more recently the Smith case.  They all speak in

24 terms of -- there are two prongs.

11:00:10  25                    Under the collateral estoppel prong, we

1  believe that all of the Connecticut claims would be barred

2  by collateral estoppel having already the issue, the

3  central issue, having already litigated.  As Your Honor can

4  see from their amended complaint in Connecticut, they claim

11:00:29  5  abuse of process, they claim vexatious litigation, and they

6  claim that the filing of the lawsuit in Connecticut was an

7  unfair trade practice under Connecticut law.

8          And the collateral estoppel, of course,

9  turns on whether the legal standard in Connecticut for

11:00:44  10  those causes of action is the same legal standard as the

11  bad faith determination that Your Honor ruled not once but

12  three times.  And I bring that up because I think that's a

13  distinguishing feature of this case that should aid in the

14  Court's exercise of discretion to enter the injunction

11:01:00  15  here.

16          But under the collateral estoppel, you know,

17  the U.S. Supreme Court said in Smith versus Bear that

18  whether there are shades and fades or minor variations in

19  the legal standard should not preclude the collateral

11:01:14  20  estoppel for the relitigation exception.  And I would think

21  even more importantly the Fifth Circuit decision in

22  recoverage where the Fifth Circuit wrote about the fact

23  that you can look at the two legal standards in the

24  abstract and think, well, you know, I think these are

11:01:27  25  different in the abstract, but that's not what you do for

1 the relitigation exception.  You put it in the context of

2 the way the claims are pleaded.

3          And we believe that if Your Honor looks at

4 the Connecticut lawsuit and puts it in the context of the

5 way they pleaded the Unfair Trade Practices Act claim, for

6 example, the ultimate and really total basis for it is the

7 filing of the federal lawsuit.  And so, it comes down to

8 whether that lawsuit was filed in bad faith, which is, of

9 course, the matter that Your Honor ruled on on their

10 counterclaim for attorneys' fees, ruled on on the motion

11 for reconsideration on their counterclaim.

12          Your Honor will recall that you held that

13 there wasn't sufficient evidence of bad faith.

14          THE COURT:  Yes.  I've tried to parse my

15 wording in light of what's happened since.  I think your

16 client's strongest argument is what I said on the motion

17 for summary judgment.  I said, quote, cannot conclude that

18 this lawsuit was brought in bad faith or that it is

19 appropriate to equitably allocate all the costs indemnify

20 defendants to plaintiff.

21          MS. YEATES:  Right.

22          THE COURT:  And then on the attorneys, that was

23 because GSS, GP and GSS had asked for attorneys' fees

24 because they believed, quote, plaintiffs' claims were

25 frivolous and asserted in bad faith.

1             MS. YEATES:  Exactly.

2             THE COURT:  Okay.  Then on the order -- on the

3     motion for reconsideration and Rule 11 sanctions, I did use

4     somewhat more equivocal language.  I said on the motion for

11:03:07   5     reconsideration because it would lead to additional

6     hearings and costs and denying Rule 11 sanctions because

7     the Court, quote, did not find sufficiently strong evidence

8     of bad faith or improper motive.

9             I guess my question for you, Ms. Yeates:  If

11:03:26  10     the only determination and the only time I used -- I mean,

11     did I knock out only the vexatious litigation claims or do

12     we have to worry about the distinction between malicious

13     prosecution or vexatious suit vis-a-vis abuse of process?

14             MS. YEATES:  Well, we think not, Your Honor.

11:03:46  15     And, again, that goes to whether it's the same standard --

16             THE COURT:  Same or not.

17             MS. YEATES:  -- and that takes you right back

18     to the Fifth Circuit's recoverage case.  If you read their

19     motion for leave to file the amended complaint in

11:03:57  20     Connecticut, what they say very plainly in that motion is

21     that the basis of everything that follows is the filing of

22     the federal case in this court.  And if you read their --

23     for example, their CUTPA, specific paragraph on CUTPA, the

24     only specific fact they mention is the filing of this

11:04:15  25     lawsuit.  With respect --

1           THE COURT:  CUTPA, for the court reporter, is

2  all caps, C-U-P-T-A.

3           MS. YEATES:  And all of the facts that they

4  allege, Your Honor, of course, as we showed you in our

11:04:28   5  reply brief with our chart, all of the facts that they

6  allege came out of discovery in this lawsuit.  And if you

7  read their allegations, which I think is very important,

8  since we agreed to give them three extra weeks, and we gave

9  them all our briefing about why we thought it was res

11:04:45   10  judicata, why collateral estoppel.  So if there is some way

11  for them to plead this case in Connecticut where it

12  wouldn't be barred, they've had every opportunity.

13           Nevertheless, when you read their

14  complaint, all of the facts lead up to and culminate in the

11:04:59   15  filing of this litigation.  And we believe at the end of

16  the day, Your Honor, the standard, the legal standard, in

17  Connecticut, whether you want to call it vexatious

18  litigation or abuse of process, or if you want to base an

19  unfair trade practices claim on the fact that we brought

11:05:12   20  this litigation, which is what they're trying to do in

21  Connecticut, that the legal standard boils down to the same

22  thing --

23           THE COURT:  Just semantics, you think?

24           MS. YEATES:  That's exactly right, it's just

11:05:22   25  semantics.  And that's what the Supreme Court was talking

1  about in Smith versus Bear, if the legal standard

2  differences or shades and phases of the same thing, that

3  that should not preclude collateral estoppel for the

4  relitigation exception.

11:05:34   5                And then also, again, in recoverage,

6  because if you put the standards up on a blackboard, which

7  is what counsel wants Your Honor to do, and say, well, this

8  has this element and this doesn't have that element, that's

9  what the Fifth Circuit was talking about in recoverage,

11:05:48   10  that you could put the elements up on a blackboard and say,

11  well, in the abstract, they look different, but that's not

12  how we make the determination.  The Court -- the Fifth

13  Circuit says you make the determination by reading the

14  amended complaint here and asking at the end of the day is

11:06:02   15  the basis of this complaint that the Alkek parties filed

16  the federal lawsuit in bad faith.  And that's what Your

17  Honor ruled on, and that's why we believe it's collateral

18  estoppel.  But we also think that all three claims would be

19  res judicata.

11:06:16   20                Let me correct that.  Counsel's correct when

21  he says that for vexatious litigation in Connecticut, the

22  underlying case would have had to have concluded and,

23  therefore, we can't get to res judicata on vexatious

24  litigation because it could not have been brought in the

11:06:33   25  underlying federal case in Your Honor's court, but we think

1  that's clearly barred by collateral estoppel anyway.

2          But to the extent that CUTPA or you think

3  abuse of process, if you thought they couldn't be barred by

4  collateral estoppel, they would certainly be barred by what

11:06:49   5  could have been brought in Your Honor's court.  And that

6  takes us to what, I think, is a very interesting legal

7  question, which is are the Tuckerbrook entities correct in

8  saying that federal district judges never have discretion

9  under the Anti-Injunction Act relitigation exception to

11:07:07   10  enjoin based on what could have been brought in the

11  underlying federal case, because that's what they're

12  arguing.  And that's where we see this split in the

13  circuits where the Ninth Circuit in the Alura ^ ?(phonetic)

14  case agreeing there with Professor Wright's treatise says

11:07:25   15  that it can't be the case; that you could never enjoin

16  based on what could have been brought, because if that were

17  true, there would be no, in effect, relitigation prong for

18  res judicata, because everything would have had to have

19  been actually litigated and, therefore, everything would

11:07:41   20  fall out under collateral estoppel anyway.

21          And Your Honor, I'm sure, has read Judge

22  Higginbotham's footnote, in that lengthy footnote in the

23  Blanchard case, about where is the Fifth Circuit on this

24  and about how Judge Garwood wrote in the en banc decision

11:07:54   25  in Jackson, which was dicta, because Jackson was a

1  collateral estoppel case.  But he said in dicta that

2  perhaps the Fifth Circuit would not allow injunctions based

3  on what could have been brought.  But then Judge Garwood

4  was on the panel in Vasquez, one of several Fifth Circuit

11:08:13  5  cases, that have indicated that it is possible to enjoin

6  based on what could have been brought.

7             THE COURT:  So you think it's not been

8  overruled, but the Fifth Circuit now has a different

9  standard than the one previously announced?

11:08:26  10            MS. YEATES:  I think Judge Higginbotham is

11  exactly right, the Fifth Circuit has gravitated towards the

12  Ninth Circuit.

13            THE COURT:  Ninth Circuit.

14            MS. YEATES:  And perhaps more importantly it

11:08:32  15  makes more sense, because otherwise --

16            THE COURT:  I know what you're arguing.  I

17  just -- you know, as a district court, I have to mind my

18  manners.  I'm --

19            MS. YEATES:  Right.

11:08:40  20            THE COURT:  -- Fifth Circuit jurisprudence.

21            MS. YEATES:  Right.  But I would ask Your Honor

22  how many Fifth Circuit panel decisions do I need before

23  it's clear that the Fifth Circuit does understand the

24  Supreme Court to be saying there is a res judicata prong of

11:08:52  25  the relitigation exception.  Indeed, in Smith versus Bear

1    and in Chick Kam Choo, both times, the Supreme Court talked

2    about two prongs of the relitigation exception, not just

3    collateral estoppel.  Both of those cases were collateral

4    estoppel cases on the facts.  And in Chick Kam Choo, the

11:09:11    5    Supreme Court looked at the collateral estoppel element or

6    prong, but all of these Fifth Circuit cases that we cite

7    to, Your Honor, Vasquez, Binds, Moore, Giliespie, they all

8    come after Chick Kam Choo.

9              So certainly none of those Fifth Circuit

11:09:26    10    panels thought that the Supreme Court was holding in Chick

11    Kam Choo that you could never enjoin for a relitigation

12    exception based on what could have been brought.  And to me

13    that's the critical aspect of this legal issue, because the

14    legal issue determines whether any federal judge could ever

11:09:42    15    enjoin based on what could have been brought in the federal

16    suit.  Because if counsel is right, if Tucker Brook's

17    counsel is correct, and you can never use what could have

18    been brought res judicata to enjoin for the relitigation

19    exception, that means no federal judge anywhere can ever

11:09:58    20    enjoin, and that's not right.

21              THE COURT:  Your theory on that is because

22    there could always be an additional claim added that wasn't

23    there before?

24              MS. YEATES:  Right.  In other words, if you're

11:10:05    25    limited on the relitigation exception to what --

1          THE COURT:  Oh, what was actually litigated.

2          MS. YEATES:  -- actually litigated, then it

3  falls under collateral estoppel.  So why don't we --

4          THE COURT:  I'm trying to understand the end

11:10:15   5  game here.  That would mean that as long as your adversary

6  kept adding new claims for relief, that it would never be

7  final?

8          MS. YEATES:  Right.  That's right.

9          THE COURT:  Okay.

11:10:22   10          MS. YEATES:  And we don't believe the Supreme

11  Court intended that in Chick Kam Choo or in Smith.  And

12  remember in Smith, the Court wrote this is just a rerun of

13  Chick Kam Choo.  That was the Supreme Court's wording.  So

14  we don't think Smith said anything new.  Counsel argues

11:10:37   15  that Smith overrules all these Fifth Circuit panel

16  decisions.

17          When we cite Vasquez, counsel -- opposing

18  counsel says Vasquez is overruled by Smith.  You know,

19  Vasquez was decided after Chick Kam Choo.  We don't believe

11:10:49   20  Smith says anything different from Chick Kam Choo.  And so,

21  we think these series of Fifth Circuit decisions tell us

22  where the Fifth Circuit's law would be.

23          So we think you do have discretion, Your

24  Honor, but absolutely we understand its discretionary,

11:11:04   25  absolutely.  And all the language in Smith versus Bear that

1 opposing counsel relies on about the injunctive authority
2 being narrow, you know, that the -- the exercise of the
3 injunction should be narrow, that it's heavy on artillery,
4 all of that, we think, goes to your discretion.  And that's
11:11:20  5 why we've tried to identify specific distinguishing
6 features.  Why does this case, unlike other cases that
7 might come before you, why does this case merit an
8 injunction?  And we've set them out in our reply, but we
9 think it's the fact that you have --
11:11:35  10          THE COURT:  I've ruled on it three times.
11          MS. YEATES:  Right.  You had the judicial
12 hopscotch, because they were poised to appeal this to the
13 Fifth Circuit, but they've dropped it and preferred to go
14 to their home forum in Connecticut.
11:11:48  15          You have the fact that it is beyond per
16 ad venture.  We believe that these claims would be barred.
17 That's one of the things the Supreme Court says to look at
18 in Bear.  We have the fact that Your Honor happens to be
19 the same federal judge that ruled below.  And -- and, see,
11:12:01  20 Your Honor, you just said that, well, you thought your
21 wording in the motion to reconsider maybe wasn't exactly
22 the same as what you said, but you know what you intended.
23 And obviously that has to be determined from the record
24 what Your Honor wrote.
11:12:14  25          But the fact that there are two orders,

1  and even Your Honor thinks, well, maybe they're worded a

2  little differently, it seems to us would make it

3  appropriate for this Court to decide the res judicata

4  collateral estoppel.

11:12:26  5              And then finally the situation is such in

6  Connecticut that either I'm going to be faced with a judge

7  that's not as familiar deciding the res judicata, or we're

8  going to go spend lots of money in Connecticut.  And we

9  think that when you weigh that in the balance, we're -- the

11:12:43  10 civic organization here are similarly situated to the

11  university in the Vines case, where you remember there the

12  district court did not enjoin, and the Fifth Circuit said,

13  oh, no, you should have enjoined.  And there the party was

14  a university.

11:12:56  15              And so, I think there's some public

16  interest to be weighed in here in exercising your

17  discretion on whether it makes sense for this civic

18  organization to spend its money litigating in Connecticut

19  something that could be determined today by Your Honor.  So

11:13:10  20 that's our argument.  I appreciate the opportunity.

21              THE COURT:  Thank you very much.

22              MS. YEATES:  Thank you.

23              THE COURT:  Tell me your last name one more

24  time, please.

11:13:17  25              MR. CARNATHAN:  Good morning, Your Honor.  My

1  name is Sean Carnathan, pronounced like Jonathan.

2           Well, Your Honor, I guess I'll start with

3  the background story about why we're still doing this.

4           THE COURT:  Yes, I'd appreciate that.

5           MR. CARNATHAN:  And we're still doing it

6  because we believe that the facts and the evidence are

7  going to show that Scott Seaman, the principal managing

8  party of Alkek, waged a two-and-a-half, three-year war

9  against Tuckerbrook, specifically looking to take over its

10 business.  Tuckerbrook previously had two successful funds

11 in process.  It had the Global Distressed Fund, and it had

12 the Global Special Situations fund.

13          Mr. Seaman successfully took over the

14 Global Distress Fund.  Alkek now owns 50 percent of the

15 general partner of Global Distress and is running that

16 fund.  And GSS, the Global Special Situations, fund has

17 been liquidated.  There's nothing left in there except a

18 litigation reserve.  And so, Tuckerbrook is essentially out

19 of business.  As I stand here today, Tuckerbrook is

20 basically a destroyed company.

21          And we say that this vexatious litigation

22 in Texas that should never have been brought and was

23 brought by an organization that has a couple of hundred

24 million dollars in assets at its disposal to wage these

25 type of wars was part of an overall campaign that included

1  making false and disparaging statements to our other

2  limited partners that included making statements to the

3  press that disclosed confidential information or -- and

4  also made defamatory statements about Tuckerbrook that

11:14:49  5  included filing a false report with the state regulators.

6          THE COURT:  Let me just interrupt long enough,

7  Mr. Carnathan, to ask:  Are these factors that I must

8  consider and exercise my discretion or do they go to a

9  different point?

11:15:00  10         MR. CARNATHAN:  These are factors that go to

11  why we're continuing the litigation.  It also goes to

12  distinguish why this is a different claim.  And,

13  respectfully, Your Honor's discretion doesn't come into

14  play until after you determine that exercise of your

11:15:15  15  injunctive power under the relitigation exception to the

16  Anti-Injunction Act applies.

17         THE COURT:  Well, I understand that, but

18  that -- the parties seem to think very differently about

19  that, and all these points you think go to whether the

11:15:33  20  statutory criteria are met?

21         MR. CARNATHAN:  Yes.

22         THE COURT:  Okay.  I'm just trying to

23  understand -- okay.  And the things you allege that Alkek

24  did -- and I understand they were harmful to your client --

11:15:50  25  but were they anything other than litigation hardball?  I

1 mean, can't people do that?  Can't people try to take over?

2 Can't people try to replace management?  Can't people, by

3 using the legal process, inflict great harm on another

4 entity?

11:16:09   5          MR. CARNATHAN:  Well, not if your -- if your

6 intention is not so much to win the lawsuit as it is to

7 take over the business of your opponent.  The underlying

8 claim by Alkek was purportedly that Mr. Banerjee had been

9 fired activating its right to withdraw.

11:16:23   10          THE COURT:  Right.  I remember all that.

11          MR. CARNATHAN:  And so -- and then purportedly

12 the issue was whether Mr. Banerjee remained directly or

13 indirectly involved with the activities of the general

14 partner, which Your Honor correctly decided and the Fifth

11:16:35   15 Circuit affirmed.

16          THE COURT:  Banerjee is B-A-N-E-R-J-E-E.

17          MR. CARNATHAN:  Correct.

18          But -- so what we're saying in the

19 Connecticut lawsuit is that, in fact, that was not really

11:16:49   20 Alkek's agenda.  That Mr. Seaman knew all along that

21 Mr. Banerjee was directly and indirectly involved with a

22 general partner, and, in fact, he was engaged in an

23 entirely different operation, which was to grind

24 Tuckerbrook into submission and to take over these funds.

11:17:03   25          THE COURT:  So Banerjee's situation was simply

1  a pretext?

2         MR. CARNATHAN:  Yes, that's precisely right.

3  Yes.

4         THE COURT:  And then if your client -- one of

5  your clients is out of business and one is under Seaman's

6  control now, what entity are you litigating on behalf of?

7         MR. CARNATHAN:  Well, the funds -- the funds

8  remain in existence, but GDF has been taken over by

9  Mr. Seaman, and GSS has been reduced to a husk of its

10  former self, and Tuckerbrook still exists at some level but

11  is no longer the vibrant entity that it was and that it

12  intend to become.  And these funds were supposed to be a

13  springboard to additional funds that would lead to bigger

14  fees that would lead to a bigger financial return.

15         THE COURT:  Does whatever damages you may be

16  awarded in Connecticut presumably go to return of equity to

17  the investors?

18         MR. CARNATHAN:  There are two aspects to the

19  damages claimed in the Connecticut proceeding.  There's a

20  return of equity to the investors who did shoulder a

21  great -- you know, the burden  ^ --

22         THE COURT:  Big risk.

23         MR. CARNATHAN:  -- and litigation.  There's

24  also claims for damages on behalf of Tuckerbrook

25  Alternative Investments as the portfolio manager as the

1 party that started these funds for its losses resulting

2 from Alkek's wrongful conduct.

3                    So that's driving this, Your Honor, is that

4 we still have tremendous losses.  And the victory in this

11:18:33 5 court was right, and we're glad to have won, but it's

6 somewhat cold comfort given the extensive losses that my

7 client suffered.

8                    THE COURT:  Well, why didn't you pursue an

9 appeal, then?  I mean, you seem to feel very strongly I was

11:18:45 10 wrong about this.  Why didn't you pursue the appeal in the

11 Fifth Circuit?

12                    MR. CARNATHAN:  Well, that actually dovetails

13 with the collateral estoppel argument, which Your Honor

14 correctly identifies as their best point.  The difficulty

11:18:52 15 that we perceived on appeal was that, frankly, we didn't

16 think we were going to win, and that's because Your Honor's

17 rejection of our counterclaim was a discretionary matter.

18                    We brought that counterclaim under your

19 inherent powers to control your docket.  It was an

11:19:07 20 equitable counterclaim.  We were asking Your Honor to look

21 at this thing in equity and say, you know, Alkek deserves

22 to bear the burden here.  And Your Honor decided, as a

23 matter of your apparent discretion, to reject that claim.

24                    THE COURT:  Well, I mean, we have a lot of

11:19:25 25 requests for sanctions and requests for other punitive

1  action.  I know a lot of law firms around town and probably

2  around the country have now instituted a committee review

3  whereas no attorney in the firm can file for sanctions or

4  file for vexatious litigation or abuse of process without

11:19:50    5  going through a review by those attorneys who -- some of

6  the attorneys not involved in the case.

7                   You know, on the continuum of litigation

8  that we see in federal court, I just did not see this as

9  toward the extreme end either way.  I mean, I didn't think

11:20:16   10  it was a clearly meritorious case.  Obviously it came out

11  the other way, but I didn't think it was an absurd case.

12                   And I do see some merit in Ms. Yeates' point

13  that I would be the -- in terms of efficiency of an economy

14  of effort, I would be a likelier person to rule on whether

11:20:44   15  the Connecticut suit should go forward than would be the

16  Connecticut court.  And no reflection at all on the judge,

17  whom I don't know.  But what's your response to that point

18  in terms of just the economy of time and lawyers' fees?

19                   MR. CARNATHAN:  Well, Your Honor, let me first

11:21:01   20  say that bringing vexatious litigation claims or request

21  for sanctions is not something I do lightly.  I think this

22  is the only time I've ever brought a vexatious litigation

23  claim, and the number of times I've asked for sanctions I

24  think I can count on one hand.

11:21:17   25                   And part of the difficulty I think Your

 1  Honor faces is that Mr. Fogler did an awfully good job for

 2  Alkek giving them an underserved veneer of respectability

 3  for claims that Mr. Seaman knew perfectly well were not

 4  right and knew perfectly well he was bringing for ulterior

 5  motives.

 6              THE COURT:  Well, there are good attorneys on

 7  all sides.  I don't doubt that a bit, but I'm concerned as

 8  to how I'm -- let me just say my concern.

 9              MR. CARNATHAN:  Sure.

10              THE COURT:  There are good lawyers on both

11  sides.  You're certainly one.  How do I get inside

12  somebody's mind like Mr. Seaman and decide that this

13  litigation was brought not for this purpose but for that

14  purpose?  How do I do that?

15              MR. CARNATHAN:  That's precisely what Your

16  Honor should not be doing today or when -- as you decide

17  this case.  And that's precisely the point to the Smith

18  case, Smith V Bear, which is, we believe, absolutely fatal

19  to Alkek's position.  The Smith case is painfully clear,

20  Your Honor, that the antilitigation exception -- excuse

21  me -- the relitigation exception to the Anti-Injunction Act

22  is very strictly and narrowly applied.  And that the core

23  message behind the Anti-Injunction Act is one for respect

24  for the state courts, and that the state courts are

25  perfectly capable of determining the res judicata or

1 collateral estoppel.

2          THE COURT:  No, I've litigated in the state

3 courts.  I know what you're saying.  And I have every

4 respect for them.  But I think the secondary point is that

11:22:53   5 I am more familiar with these cases.  I am more familiar

6 with the history, and especially if the parties are going

7 to need to do discovery in Connecticut, we are talking

8 about considerable expense.

9          MR. CARNATHAN:  Well, that actually, I would

11:23:06   10 say, Your, Honor is a real danger here.  A danger that

11 could lead Your Honor to an incorrect decision under the

12 law is that you're essentially being invited to expand upon

13 what Your Honor meant in what is a relatively short order.

14 You devoted, I think, less than or approximately a page to

11:23:24   15 the rejection of the equitable counterclaim.  Essentially

16 said I can't conclude that there was bad faith or that I

17 should equitably apportion the fees to Alkek here, and that

18 was it.

19          And what Smith v. Bear and all the other

11:23:38   20 cases out there tell us is that you're limited to the text.

21 All you can look at is what the Court actually said.  You

22 can't expand upon what you might have said or what you were

23 thinking or what you think now in light of the additional

24 things you've learned.  We're really limited by what was

11:23:51   25 actually said.  And I think you're being invited here to

1   expand upon what you actually said.

2               And what the real test here is on the

3   collateral estoppel is was the standard that Your Honor

4   applied in reaching that decision exactly beyond per

11:24:06   5   venture a crystal-clear the same standard that we're

6   talking about in the Connecticut claims.  And the fact is,

7   Your Honor, that Your Honor never decided whether Alkek

8   could be liable under Connecticut vexatious litigation law

9   or whether it could be liable for Connecticut abuse of

11:24:21   10   process or whether it could be liable for violation of its

11   actually CUTPA, C-U-T-P-A.  It's the Connecticut Unfair

12   Trade Practices Act.

13               Your Honor never decided those things.  And

14   very respectfully under Smith v. Bear, that's the end of

11:24:33   15   the inquiry.  You really are not free to try to decide

16   whether, you know, this is the bad faith standard that you

17   were applying when you made the summary judgment decision

18   is the same thing as what the Connecticut courts might

19   apply when they decide our currently pending state court

11:24:49   20   claims.

21               THE COURT:  Okay.  But either way, one judge is

22   going to have to do some research on that trying to figure

23   out which claim is independent, which claim is consumed by

24   the other one.

11:25:00   25               MR. CARNATHAN:  Well -- and Alkek will be free

1   to assert the preclusive effect of your judgment in the

2   Connecticut state courts, and presumably understand in a

3   deeper way exactly how Connecticut applies its own

4   standards and are entitled as a sovereign itself to say how

11:25:17   5   they apply those standards.

6                  And, actually, there are a couple of cases

7   where we -- that I think are cited in the papers that

8   describe to Your Honor exactly what those standards are.

9   The Embalmer Supply case, which is 929 A 2d 729, which is a

11:25:35   10   Connecticut Court of Appeals decision of 2007, tells us

11   that the standard for vexatious litigation is whether there

12   was a lack of probable cause.  And it explains that that --

13                  THE COURT:  What does it mean you have probable

14   cause on the civil side?

11:25:48   15                  MR. CARNATHAN:  Well, exactly, Your Honor,

16   that's the question.  And the way it's described in this

17   Connecticut case is whether the party brought the case had

18   a bona fide belief in the existence of facts essential

19   under the law for the action and whether that belief is

11:26:02   20   such that a person of ordinary caution and prudence in

21   judgment would entertain it.  And the case goes on to say

22   that the person must have had knowledge of facts, actual or

23   apparent, strong enough to justify a reasonable person in

24   the belief that he has lawful grounds for prosecuting the

11:26:19   25   defendant in the manner complained of.

1          And that's how the Connecticut court

2   describes its standard.

3          Now, we don't know if that resembles the

4   standard that Your Honor had in mind when you rejected our

11:26:29   5   equitable --

6          THE COURT:  No, I know that goes to the

7   question of which judge ought to decide, right?

8          MR. CARNATHAN:  Well, that's part of the

9   difficulty, truthfully, Your Honor, is having you decide

11:26:38   10   after the fact that, yeah, that sounds about right is not

11   really the way it's supposed to go.  It's supposed to be a

12   determination looking at the standard applied, the standard

13   applied, and saying, you know what, the Connecticut court

14   might interpret it differently.

11:26:51   15          And interestingly enough, the Smith v.

16   Bear decision involved the application of Federal Rule of

17   Civil Procedure 23, which apparently was textually almost

18   identical to the West Virginia Rule of Civil Procedure 23.

19   And the Court said, you know, even if the language is

11:27:07   20   exactly the same, unless it's apparent beyond per

21   adventure, and unless we know for a fact that West Virginia

22   applies the rule the same way, the Court has to refrain

23   from enjoining the proceedings, respect the state court and

24   let it make that determination.

11:27:21   25          THE COURT:  And then if your client lost the

1  Connecticut action, would it then be free to go to New York

2  and file the same action?

3              MR. CARNATHAN:  No.  No, Your Honor.

4              THE COURT:  Why not?

11:27:31    5              MR. CARNATHAN:  Well, at that point we would

6  have a determination that we would lose on the merits of

7  the claim that we brought.

8              THE COURT:  But do you have it -- but New York

9  law on abuse of process or vexatious litigation may be

11:27:40   10  different from Connecticut law.

11              MR. CARNATHAN:  Right, but New York law

12  wouldn't apply because we were a Connecticut-based entity

13  at the time of the facts we complain of.

14                  And just as sort of what I think is an

11:27:54   15  interesting aside --

16              THE COURT:  But all you would need would be

17  minimum contact somewhere, right?

18              MR. CARNATHAN:  Well, minimum contacts to get

19  personal jurisdiction, but not to affect the choice of law

11:28:05   20  question.  We would still confront, you know, whose law

21  applies.  And we say Connecticut law applies because we

22  were a Connecticut-based entity, but we could not go to

23  another jurisdiction and then argue a different law applies

24  because we didn't like the determination under the first

11:28:20   25  law.

1             THE COURT:  I'm asking a more theoretical

2    question.  If it were the case that you -- that part of the

3    transaction had been in New York, even though neither party

4    was based in New York, couldn't you then make the claim

11:28:32    5    that New York needed to listen to your cause of action?

6             MR. CARNATHAN:  Well, I don't think so, because

7    at that point we would have made our bed, so to speak.  We

8    would have already argued the Connecticut law applies, and

9    so, we would she judicially estopped from changing our

11:28:47   10   minds.  I think res judicata would apply to us at that

11   point, because we would have had the opportunity to

12   prosecute such claims to the extent that we would think

13   they were valid.

14             That actually brings me to the res

11:28:59   15   judicata argument, which I think is a little bit of a red

16   herring in terms of trying to make it into some big split

17   in the circuits issue.

18             THE COURT:  Uh-huh.

19             MR. CARNATHAN:  It actually at some level

11:29:09   20   doesn't matter, because res judicata doesn't apply even if

21   Your Honor were to find you have a more expansive

22   injunctive power than we say is appropriate, because the

23   vexatious litigation admittedly could not have been brought

24   as a counterclaim and, therefore, res judicata doesn't

11:29:24   25   apply.

1          The abuse of process claim arises after the

2  filing of the answer and --

3          THE COURT:  Yes, yes, yes.  All right.

4          MR. CARNATHAN:  -- doesn't apply.

11:29:30    5          And the CUTPA was at most a permissive

6  counterclaim, because it's based upon a nucleus of facts

7  other than what do the plaintiffs' counterclaim -- excuse

8  me -- the plaintiffs' claim was based on.  The plaintiffs'

9  claim was based upon the termination of Mr. Banerjee, the

11:29:50   10  withdrawal notice and whether Mr. Banerjee was directly or

11  indirectly involved.

12          Our counterclaim -- or our CUTPA claim

13  would have been based, as we describe it, partly on the

14  vexatious litigation.  And so to the extent it's based on

11:30:02   15  vexatious litigation, we couldn't have brought it as a

16  counterclaim, so, again, res judicata doesn't apply.

17          But even to the extent that it's based on

18  the other conduct, the -- calling the fed, the state

19  regulators, the calling the press, the maligning us to the

11:30:16   20  LPs, that would be a permissive counterclaim.  It's not

21  part of that same nucleus fact.

22          And to the extent it's a permissive

23  counterclaim, res judicata does not bar it.

24          THE COURT:  But, surely, there's nothing that

11:30:32   25  prevents a plaintiff in the lawsuit from calling the press

1   or saying negative things about the defendant.  That

2   happens all the time; right?

3               MR. CARNATHAN:  That's the application of the

4   CUTPA standard.  It depends upon what they said, whether

11:30:44   5   those things were confidential, and they're violating the

6   duty of confidentiality, whether those things are false,

7   and they're actually defaming the person they're speaking

8   about.

9                    The CUTPA standard, if I could read that

11:30:56   10   to Your Honor, is dramatically different, I think, from

11   whatever standard Your Honor applied on reaching the

12   summary judgment.  In fact, the description of CUTPA, which

13   is in the Landmark case, which I believe Alkek cites, it

14   says, the Connecticut law has adopted the criteria set out

11:31:12   15   in the cigarette rule by the Federal Trade Commission.  And

16   it gives us three criteria, not all of which need to be

17   met, any one of the three will do, or some constellation of

18   the three will also work.

19                    Number one is whether the practice without

11:31:27   20   necessarily having previously been declared unlawful

21   offends public policy as it has been established by

22   statutes, common law or otherwise.  In other words, it is

23   within at least the penumbra of some common-law statutory

24   or other established concept of unfairness.  That's

11:31:42   25   Number 1.

1           Number two is whether it is immoral,

2  unethical, oppressive or unscrupulous.

3           And number three is whether it causes

4  substantial injury to consumers, competitors or other

5  business people.

6           The Court then goes on to explain that a

7  violation of CUTPA can be based on an actual deceptive

8  practice or a practice amounting to a violation of public

9  policy, and also notes that a single act of misconduct may

10 constitute a CUTPA violation.  That's all in 10 A 3d 61,

11 Pages 81 through 83.

12          Now, I submit to Your Honor that there's

13 really no way that Your Honor can conclude that that's the

14 standard you were applying when you entered summary

15 judgment or --

16          THE COURT:  So you're saying, then, is that

17 under the previous litigation exception, there's really no

18 way for the judge in a first case to bar a second

19 proceeding?

20          MR. CARNATHAN:  No, Your Honor.

21          THE COURT:  Because you said in the

22 West Virginia case where the federal rule and the

23 West Virginia rule were the same, even that could not be

24 allowed.

25          MR. CARNATHAN:  That went forward.  That's not

1   to say that they are not cases where injections have

2   entered.  The Chick Kam Choo case allowed a partial

3   injunction.  And in that one, the Court dismissed a case

4   based on form nonconvenience.  It was based on a maritime

11:32:58   5   accident in Singapore.  And the Court concluded that

6   Singapore law applied, rejected the federal -- the

7   application of certain federal statutes that might

8   otherwise have applied and determined that Singapore was

9   the appropriate forum and dismissed the case.  The.

11:33:11   10   Plaintiffs promptly went and sued in the

11   Texas state courts, and I believe originally found --

12   received an injunction, which I believe the Supreme Court

13   vacated.

14   But the upshot of the case was that to the

11:33:24   15   extent that Texas -- the Texas state courts might apply a

16   different forum nonconvenience standard, then the federal

17   court could not enjoin that from going forward, even though

18   the order had said something about how Singapore would be

19   the more appropriate forum.  But it did say it could enjoin

11:33:40   20   the plaintiff from relitigating the choice of law issue,

21   because the federal court had actually decided that.

22   And that's part of that -- the purpose to

23   the relitigation exception is to protect the Court's

24   judgment to the prevent plaintiffs from going out and just

11:33:52   25   blatantly relitigating a decision that this Court or that a

1  federal court has already decided.

2            And interestingly enough --

3            THE COURT:  But you draw that very title,

4  right, what a Court has actually decided?

11:34:04  5            MR. CARNATHAN:  Absolutely.  Absolutely, Your

6  Honor.  And so does the Supreme Court.

7            THE COURT:  Because it would normally be the

8  case that a state -- like our Deceptive Practices Act,

9  normally that statue would be different from -- at least

11:34:16  10  the jurisprudence under would different any other state's

11  standard.

12            MR. CARNATHAN:  Yes.

13            THE COURT:  So you could litigate in Texas

14  under the DTPA and then go litigate under another state

11:34:29  15  statute that serves a similar purpose.

16            MR. CARNATHAN:  I would say that's conceivable,

17  Your Honor, if the two standards are manifestly different.

18            THE COURT:  But even if they're slightly

19  different, like in the West Virginia case, even then.

11:34:42  20            MR. CARNATHAN:  I think even if they're not

21  manifestly the same, I think Your Honor would have to be

22  able to conclude that the Texas standard that you actually

23  decided and the Connecticut standard that the plaintiff

24  then gone and reasserted was absolutely the same.

11:34:52  25            THE COURT:  But I thought in the West Virginia

1 case, that was essentially what happened, that they were

2 the same verbally, but that they -- nonetheless one was not

3 binding on the other.

4          MR. CARNATHAN:  That's right, Your Honor.

11:35:03  5 That's right.  That's the point I'm trying to make, I

6 guess, inelegantly.

7          THE COURT:  No, I understand what you're

8 saying.  I'm just trying to think it through.

9          MR. CARNATHAN:  But bear in mind that that's

11:35:12 10 not the end of the res judicata collateral estoppel

11 question.  That's just the end of the question whether this

12 Court should intrude in another sovereign's proceedings,

13 whether this Court should dictate to that sovereign the

14 collateral estoppel --

11:35:22 15          THE COURT:  That's obviously the hardest part.

16 I mean, I've never done that before.  I've never ever told

17 the state court it couldn't proceed.  I'm well aware of the

18 magnitude of the decision.  I really am.

19          MR. CARNATHAN:  One point that I would like to

11:35:35 20 make is I feel like to some extent in our papers we were

21 perhaps overenthusiastic in saying that the Smith V Bear

22 decision really overruled the Fifth Circuit decisions,

23 because in getting ready to speak here today, Your Honor, I

24 went and studied all those Fifth Circuit decisions.  And I

11:35:52 25 think it's correct to say that at no time has the Fifth

1  Circuit lost sight of the fact that the issue has to be

2  actually decided in order for this Court to exercise its

3  injunctive power.  To the extent that the Fifth Circuit

4  ever did lose sight of that, it would be incorrect, but I

11:36:08   5  don't think it ever has.

6          And to the contrary, there's one case that I

7  don't believe really gets cited in the -- any of the

8  papers, but it actually, I think, is the clearest statement

9  of the Fifth Circuit's correct view of how the claim

11:36:21  10  preclusion aspect of the relitigation exception works, and

11  that's the Assurance Company of America v. Kirkland

12  decision, which is found at 312 F3d 186.  And that's a 2002

13  statement by the Fifth Circuit.

14          And that one dealt with a contractor who was

11:36:40  15  suing for coverage under a general liability policy.  He

16  had been repairing some kind of a retaining wall, and the

17  retaining wall collapsed and caused a bunch of damage.  So

18  then he went looking for insurance coverage.  And there

19  was -- it was -- he was like a sole proprietor of a

11:36:54  20  company, and he had a couple of different companies, and

21  there was some ambiguity about whether he was acting in his

22  capacity for one company or another company or in his

23  individual capacity.

24          THE COURT:  All right.

11:37:02  25          MR. CARNATHAN:  He went forward in the federal

1  court and he lost.  And essentially the reason that he lost

2  was the federal court decided that, well, when you made the

3  contract to fix this retaining wall, you were actually, you

4  know, acting for Company B rather than Company A, and when

11:37:18  5  you paid for the damage that was done, you paid for that

6  out of your own pocket.  And so, in fact, the insured

7  company doesn't have any loss, and so there is no coverage.

8            Federal appeal lost on appeal and then

9  promptly sued in the state court in his individual

11:37:32  10  capacity.  And the Fifth Circuit said that they could not

11  enjoin that.  They actually vacated an injunction that

12  originally favored the insurance company.  And the

13  distinction it made was that the federal court had decided

14  only the rights of the company and not of the individual

11:37:45  15  and, therefore, they went forward.

16            And what makes Kirkland so interesting is

17  it actually applies the transactional test.  It goes

18  through and discusses the four prongs -- I'm suddenly

19  blanking.

11:37:56  20            THE COURT:  I know.

21            MR. CARNATHAN:  Goes through the four prongs.

22  But then it very explicitly in Pages 189 and 90 says,

23  well -- but it still doesn't result in an injunction here,

24  because the law is clear that the claim has to actually be

11:38:08  25  decided, and it wasn't actually decided here.

1                     And when you go through and you study the

2   Fifth Circuit cases, I think it's right that every one of

3   them at some point quotes that Chick Kam Choo language

4   about how it has to actually be decided.  And so, the

11:38:20   5   transactional test is the starting place.  It's not the

6   ending place.  It's necessary but not sufficient.

7                     If you look at the transactional test to

8   distinguish whether the claim -- whether the claims are the

9   same -- and that sort of comes out in the Gillespie case

11:38:37   10   where the claim was roughly, well, the evidence is

11   different now, and that's where the Court looks at the

12   transactional tests and says, okay, well, your evidence may

13   have changed, but the facts at issue are still the same.

14   The Gillespie was the suicide case, whether the -- it was a

11:38:49   15   claim on a life insurance policy, and the question was

16   whether the fellow committed suicide, which would exclude

17   coverage.  And that was the transactional -- transactional

18   test.

19                     So I can walk through all of the Fifth

11:39:01   20   Circuit cases.  I won't unless Your Honor wants me to.

21              THE COURT:  No, that's all right.

22              MR. CARNATHAN:  I think that's right, when you

23   look at them, they all are right in line with this actually

24   decided piece.  And when you look at the Supreme Court

11:39:12   25   decision, look in particular at Chick Kam Choo, and this is

1 a 1988 decision, which I think is important because at one

2 point Alkek cites the 1986 Parsons decision.  It says,

3 well, look there's this footnote -- I think it's Footnote

4 4 -- that says, well, we don't reach whether this res

11:39:26  5 judicata is more expansive.  Well, I mean, it just doesn't

6 reach it.  It doesn't actually say it's open or it's a

7 possibility.  It doesn't reach it, because Parsons was a

8 decision that once the state court decides the res judicata

9 issue, the federal court can't go back in and sort of

11:39:43  10 overrule it through an injunction.

11            But, then, so Chick Kam Choo comes along

12 two years later and actually explains the import of the

13 Atlantic Coast Rail Company decision, which was back in

14 1970.  And Atlantic Coast Rail is at 398 U.S. 281.  And

11:39:56  15 that's where it tells us that it's an essential

16 prerequisite that the claim or issue be actually decided.

17            And I think in Atlantic Coast, we really

18 were talking about claims, because in that case, there was

19 a railroad that was being picketed by a union.  It went

11:40:12  20 into the federal court and brought federal claims saying

21 don't picket us, and the federal court denied the

22 injunction and said that the union has a right to self-help

23 under federal law.  Well, the railroad promptly ran across

24 the street to the state court and brought state law claims

11:40:27  25 to get an injunction, and actually got the injunction.

1           And so, that I would say is a case -- and

2   there was some more procedural intervening circumstances.

3   I think there was a subsequent Supreme Court decision that

4   clarified that there was a federal right to picket.  And

11:40:43  5   so, eventually the union came back and tried to get an

6   injunction, and I believe initially secured the injunction,

7   but, again, the Supreme Court vacated it.

8           And that seems to be a real claims decision,

9   because surely the railroad company could have brought both

11:40:56  10  state and federal claims in the initial proceeding based on

11  the same circumstances.  It didn't.  Ran across the street

12  and brought them to state court, and the Supreme Court

13  held, well, we can enjoin that.  And Chick Kam Choo

14  explains that pretty carefully.

11:41:10  15          So the actually decided piece is, I think,

16  awfully clear when Your Honor studies the cases.  But,

17  again, even if it's not, once you get to the res judicata

18  piece, at the end of the day, it doesn't really matter,

19  because the claims were not mandatory or compulsory

11:41:28  20  counterclaims, and so it would not be barred by res

21  judicata in any event.

22          THE COURT:  Thank you very much.  Let me take a

23  short break, and I'll be back.

24          MR. CARNATHAN:  Thank you, Your Honor.

11:41:44  25          **(Recessed at 11:41 a.m.)**

*Johnny C. Sanchez, RMR, RPR - jcscourtreporter@aol.com 713.250.5581*

1          THE COURT:  Ms. Yeates, do you want another

2    turn at bat?

3          MS. YEATES:  Yes, Your Honor.  I'd like to

4    start with the Kirkland case out of the Fifth Circuit that

11:47:58   5    counsel mentioned.  That's one of the decisions that Judge

6    Higginbotham discusses in that lengthy footnote in

7    Blanchard where Judge Higginbotham reads that case to be

8    one in the series of Fifth Circuit panel decisions

9    indicating that the Fifth Circuit's position has evolved

11:48:15  10    closer to the Ninth Circuit in terms of the ability, the

11    power of a federal judge to enjoin what could have been

12    brought.  And at the end of the day, counsel is saying

13    again this morning that there is no discretion.  Opposing

14    counsel says there is no discretion in the federal judge to

11:48:31  15    enjoin what could have been brought, and we believe that's

16    incorrect.

17              It's true that the U.S. Supreme Court teed

18    up that issue or set it out in the Parsons case, which

19    should tell us all that that Court knows how to discuss

11:48:44  20    that issue when it's discussing that issue, but that's not

21    the way the Court spoke in Chick Kam Choo, because Chick

22    Kam Choo was a case where the injunction was based on

23    collateral estoppel, not the res judicata prong.  But the

24    Court discussed the fact that the relitigation exception

11:49:02  25    has both prongs.

1                    And to me the question here is are we

2     going to write out the res judicata prong from the

3     Anti-Injunction Act?  But that's only if you have to reach

4     res judicata.  We think all of their claims in Connecticut

11:49:16    5     and their amended complaint are barred by collateral

6     estoppel.

7                    THE COURT:  But what Mr. Carnathan is saying --

8     and I hadn't been largely, not completely but largely

9     innocent of this before you brought me this case -- is that

11:49:31   10     there was a lot of financial hardball going on, there was a

11     secretive -- I guess maybe not secretive, but secretive to

12     the Court attempt to destroy Tuckerbrook, and I definitely

13     didn't rule on any of that.

14                    MS. YEATES:  Your Honor, all of that evidence

11:49:50   15     was available.  It was found in discovery in the federal

16     lawsuit before Your Honor.  And they had the opportunity on

17     their claim for bad faith to bring that proof forward, and

18     Your Honor ruled they didn't have the evidence, they didn't

19     adduce the evidence before Your Honor of bad faith.

11:50:08   20                    When you lose on an issue because you

21     didn't prove it, that doesn't mean it's not collateral

22     estoppel.  And that's what's going here, the very same

23     evidence that they could have come in -- Your Honor said,

24     "How would you prove what was in somebody's mind?"  Well,

11:50:22   25     the same way you always prove a mental state; right?  With

44

1  whatever circumstantial evidence, documents, all these
2  things that they pleaded in their complaint, which they got
3  out of the discovery in the federal lawsuit, they could
4  have come in and proved that on the counterclaim before
11:50:34  5  Your Honor on bad faith.  They just elected not to.
6              Now, whether that was intentional,
7  conscious, I don't know.  Whether, you know, they wanted to
8  go ask their home court for a decision, I don't know.  But
9  that's what they did, and having chosen to do that, they
11:50:50  10  have litigated the issue.  They don't like how it came out.
11  Maybe they don't like what they're proof looks like in
12  hindsight, but that doesn't mean they haven't litigated the
13  issue.
14              And as far as what the legal standard is,
11:51:00  15  counsel really just wants to walk away from both that
16  language in Smith versus Bear, where the Supreme Court
17  wrote that it is not the case that you don't bar on
18  collateral estoppel because the legal standards are not
19  exactly the same, they have variations, and they're --
11:51:15  20  clearly, he's walking away from the Fifth Circuit's
21  recoverage decision where the Court says, "Look at the
22  standard as the matter is pleaded."
23              And I would suggest, Your Honor, that if you
24  read this pleading, the whole basis of the pleading is
11:51:30  25  ultimately the filing and how we conducted the federal

1  lawsuit.

2              Indeed, with respect to CUTPA, in his

3  pleading, he says the reason -- and in his briefs to Your

4  Honor, the reason that they get there on CUTPA, they claim,

11:51:43  5  is because we had the audacity to file a motion for

6  reconsideration in front of Your Honor on the motion for

7  summary judgment.  So, clearly, our conduct, our fact of

8  filing the federal suit and the way we conducted the

9  federal suit, is the heart of their contention.  And what

11:51:59  10  they've done is exactly what Your Honor suggests.  They

11  just put different labels on the same conduct.

12              Indeed, in their initial complaint that we

13  moved for injunction on originally, they filed other

14  claims.  Tortious interference.  You know, they had other

11:52:14  15  claims that they then left out when they amended.  I don't

16  know whether counsel thinks those are different legal

17  standards so he could -- you know, he could bring them in a

18  separate lawsuit.

19              So we believe that there is discretion in

11:52:26  20  this Court to enjoin based on what could have been brought,

21  but we also think you could even ignore that issue and rule

22  that all of these claims are barred based on the legal

23  standard as pleaded, as the claims are pleaded, being a

24  shade or phase of the bad faith issue that Your Honor has

11:52:43  25  already litigated not once, but three times.

1                    And, again, we're not asking you to expand

2     on your rulings, Your Honor.  Your Honor knows what's on

3     the paper and what you ruled.  We're asking you to apply

4     the ruling that you made on the motion for summary judgment

11:52:56   5     where you said they didn't prove bad faith.  They had their

6     opportunity.  All this stuff they want to convince you of

7     now that's the facts that they pleaded in Connecticut, they

8     could have put that proof in front of Your Honor as

9     evidence of the bad faith.  They just didn't do it.

11:53:10   10                    And having litigated the issue, we believe

11     that Your Honor is entitled to use your discretion to

12     decide whether you ought to -- this Court ought to decide

13     the relitigation issue or, instead, we ought to have to go

14     to Connecticut and litigate this matter further.

11:53:25   15                    THE COURT:  Okay.  Thank you very much.

16                    Mr. Carnathan.

17                    MR. CARNATHAN:  Just very briefly, Your Honor.

18     We're certainly not running away from any standard.  We're

19     embracing the standard.  And I think if Your Honor studies

11:53:38   20     the Smith V Bear decision, you'll find that we're telling

21     it to you directly that Your Honor really has as to find

22     beyond per adventure that the standards are the same and

23     that it is true that trivial differences won't make a

24     difference.  But you have to really be able to find that

11:53:55   25     the federal standard that you applied and the state

1  standard for the claims that we are bringing are the same,

2  and Your Honor respectfully can't do that and, therefore,

3  the collateral estoppel element of this motion for an

4  injunction dies on the Smith decision.

11:54:09  5          In terms of using Your Honor's discretion,

6  what the cases show is that Your Honor has discretion to

7  refuse to issue an injunction.

8          THE COURT:  I know that.  I know that.

9          MR. CARNATHAN:  Okay.

11:54:20  10          THE COURT:  Discretion has to mean you can do

11  one thing or the other thing.  I mean, I know.

12          MR. CARNATHAN:  I guess my final point is that

13  I think counsel is mixing together the doctrines of claimed

14  preclusion and issue preclusion when arguing that we didn't

11:54:31  15  put in sufficient evidence on the bad faith and, therefore,

16  we're barred from bringing our more expansive claims for

17  the harm that was done to Tuckerbrook.

18          The more expansive claims that we are

19  bringing now were permissive counterclaims.  We were not

11:54:45  20  obligated to bring them.  We brought an equitable

21  counterclaim to try to mitigate the impact on our LPs in

22  the Texas action.  That did not obligate us to bring all of

23  our other claims based on all the other horrible things

24  that Scott Seaman and Alkek did.

11:55:00  25          And I can scurry over and get you a couple

1  of cites that say that res judicata doesn't bar permissive

2  counterclaims, but I think Your Honor is probably familiar

3  with that idea.

4           THE COURT:  Okay.  Thank you.  I'm not going to

11:55:10  5  try to rule from the bench.  I'll take it under advisement.

6  Thank you very much.

7           MR. CARNATHAN:  Thank you, Your Honor.

8                **(Recessed at 11:55 a.m.)**

9           **COURT REPORTER'S CERTIFICATE**

10

11  I, Johnny C. Sanchez, certify that the foregoing is a

12  correct transcript from the record of proceedings in the

13  above-entitled matter.

14

15                              /s/ _____
                                Johnny C. Sanchez, CRR, RMR

16

17

18

19

20

21

22

23

24

25

# #

**#8016** [1] - 2:2

# /

**/s** [1] - 48:14

# 0

**01803** [1] - 1:24
**08-CV-3501** [1] - 1:4

# 1

**1** [2] - 4:7, 32:25
**10** [1] - 33:10
**1001** [1] - 1:14
**11** [2] - 9:3, 9:6
**11:41** [1] - 41:25
**11:55** [1] - 48:8
**11:57** [1] - 1:6
**1221** [1] - 1:19
**186** [1] - 37:12
**189** [1] - 38:22
**1970** [1] - 40:14
**1986** [1] - 40:2
**1988** [1] - 40:1

# 2

**20** [1] - 1:5
**2002** [1] - 37:12
**2007** [1] - 27:10
**2011** [1] - 1:5
**23** [2] - 28:17, 28:18
**2500** [1] - 1:14
**281** [1] - 40:14
**2d** [1] - 27:9

# 3

**310** [1] - 1:23
**312** [1] - 37:12
**398** [1] - 40:14
**3d** [1] - 33:10

# 4

**4** [1] - 40:4
**4500** [1] - 1:19

# 5

**50** [1] - 18:14
**515** [1] - 2:2

# 6

**61** [1] - 33:10

# 7

**713.250.5581** [1] - 2:3
**713.758.1096** [1] - 1:15
**713.951.6235** [1] - 1:20
**729** [1] - 27:9
**77002** [2] - 1:14, 2:2
**77010** [1] - 1:19
**781.359.9001** [1] - 1:24

# 8

**8** [1] - 1:23
**81** [1] - 33:11
**83** [1] - 33:11

# 9

**90** [1] - 38:22
**929** [1] - 27:9

# A

**a.m** [3] - 1:6, 41:25, 48:8
**ability** [1] - 42:10
**able** [2] - 35:22, 46:24
**above-entitled** [1] - 48:13
**absolutely** [6] - 15:24, 15:25, 24:18, 35:5, 35:24
**abstract** [3] - 7:24, 7:25, 11:11
**absurd** [2] - 23:11
**abuse** [8] - 7:5, 9:13, 10:18, 12:3, 23:4, 26:9, 29:9, 31:1
**accident** [1] - 34:5
**Act** [9] - 4:22, 8:5, 12:9, 19:16, 24:21, 24:23, 26:12, 35:8, 43:3
**act** [1] - 33:9
**acting** [2] - 37:21, 38:4
**action** [7] - 7:10, 23:1, 27:19, 29:1, 29:2, 30:5, 47:22
**activating** [1] - 20:9
**activities** [1] - 20:13
**actual** [2] - 27:22, 33:7
**ad** [1] - 16:16
**added** [1] - 14:22
**adding** [1] - 15:6
**additional** [4] - 9:5, 14:22, 21:13, 25:23
**adduce** [1] - 43:19
**admittedly** [1] - 30:23
**adopted** [1] - 32:14
**adventure** [3] - 4:18, 28:21, 46:22
**adversary** [1] - 15:5
**advisement** [1] - 48:5
**affect** [1] - 29:19

**affirmed** [1] - 20:15
**agenda** [1] - 20:20
**agree** [1] - 4:10
**agreed** [1] - 10:8
**agreeing** [1] - 12:14
**agreement** [1] - 4:3
**aid** [1] - 7:13
**AL** [1] - 1:6
**ALBERT** [1] - 1:6
**ALTERNATIVE** [1] - 1:21
**ALKEK** [2] - 1:4, 1:6
**Alkek** [16] - 3:1, 3:5, 5:7, 11:15, 18:8, 18:14, 19:23, 20:8, 22:21, 24:2, 25:17, 26:7, 26:25, 32:13, 40:2, 47:24
**Alkek's** [3] - 20:20, 22:2, 24:19
**allegations** [1] - 10:7
**allege** [3] - 10:4, 10:6, 19:23
**allocate** [1] - 8:19
**allow** [1] - 13:2
**allowed** [2] - 33:24, 34:2
**almost** [1] - 28:17
**Alternative** [2] - 3:13, 21:25
**Alura** [1] - 12:13
**ambiguity** [1] - 37:21
**amended** [6] - 4:4, 7:4, 9:19, 11:14, 43:5, 45:15
**America** [1] - 37:11
**amounting** [1] - 33:8
**AND** [1] - 1:6
**announced** [1] - 13:9
**answer** [1] - 31:2
**anti** [1] - 4:23
**Anti** [5] - 12:9, 19:16, 24:21, 24:23, 43:3
**anti-injunction** [1] - 4:23
**Anti-Injunction** [5] - 12:9, 19:16, 24:21, 24:23, 43:3
**antilitigation** [1] - 24:20
**anyway** [2] - 12:1, 12:20
**apparent** [3] - 22:23, 27:23, 28:20
**appeal** [8] - 5:11, 5:12, 16:12, 22:9, 22:10, 22:15, 38:8
**Appeals** [1] - 27:10
**APPEARANCES** [1] - 1:11
**appearances** [1] - 3:2
**application** [4] - 4:21, 28:16, 32:3, 34:7
**applied** [8] - 24:22, 26:4, 28:12, 28:13, 32:11, 34:6, 34:8, 46:25
**applies** [8] - 19:16, 27:3, 28:22, 29:21, 29:23, 30:8, 38:17
**apply** [10] - 26:19, 27:5, 29:12, 30:10, 30:20, 30:25, 31:4, 31:16, 34:15, 46:3
**applying** [2] - 26:17, 33:14
**apportion** [1] - 25:17
**appreciate** [2] - 17:20, 18:4
**appropriate** [5] - 8:19, 17:3, 30:22, 34:9, 34:19
**argue** [1] - 29:23
**argued** [1] - 30:8
**argues** [1] - 15:14
**arguing** [4] - 5:1, 12:12, 13:16, 47:14

**argument** [4] - 8:16, 17:20, 22:13, 30:15
**arises** [1] - 31:1
**artillery** [1] - 16:3
**aside** [1] - 29:15
**aspect** [2] - 14:13, 37:10
**aspects** [1] - 21:18
**assert** [1] - 27:1
**asserted** [1] - 8:25
**assets** [1] - 18:24
**assisted** [1] - 2:4
**Assurance** [1] - 37:11
**Atlantic** [3] - 40:13, 40:14, 40:17
**attempt** [1] - 43:12
**attorney** [1] - 23:3
**attorneys** [4] - 8:22, 23:5, 23:6, 24:6
**attorneys'** [2] - 8:10, 8:23
**audacity** [1] - 45:5
**authority** [1] - 16:1
**available** [1] - 43:15
**avoid** [1] - 5:15
**awarded** [1] - 21:16
**aware** [1] - 36:17
**awfully** [2] - 24:1, 41:16

**B**

**B-A-N-E-R-J-E-E** [1] - 20:16
**background** [1] - 18:3
**bad** [17] - 5:7, 7:11, 8:8, 8:13, 8:18, 8:25, 9:8, 11:16, 25:16, 26:16, 43:17, 43:19, 44:5, 45:24, 46:5, 46:9, 47:15
**balance** [1] - 17:9
**banc** [1] - 12:24
**Banerjee** [6] - 20:8, 20:12, 20:16, 20:21, 31:9, 31:10
**Banerjee's** [1] - 20:25
**bar** [4] - 31:23, 33:18, 44:17, 48:1
**barred** [11] - 4:19, 7:1, 10:12, 12:1, 12:3, 12:4, 16:16, 41:20, 43:5, 45:22, 47:16
**base** [1] - 10:18
**based** [24] - 5:21, 12:10, 12:16, 13:2, 13:6, 14:12, 14:15, 29:12, 29:22, 30:4, 31:6, 31:8, 31:9, 31:13, 31:14, 31:17, 33:7, 34:4, 41:10, 42:22, 45:20, 45:22, 47:23
**basis** [6] - 4:21, 6:9, 8:6, 9:21, 11:15, 44:24
**bat** [1] - 42:2
**bear** [2] - 22:22, 36:9
**Bear** [12] - 7:17, 11:1, 13:25, 15:25, 16:18, 24:18, 25:19, 26:14, 28:16, 36:21, 44:16, 46:20
**BECK** [1] - 1:18
**become** [1] - 21:12
**bed** [1] - 30:7
**BEFORE** [1] - 1:9
**behalf** [2] - 21:6, 21:24
**behind** [1] - 24:23
**belief** [3] - 27:18, 27:19, 27:24

**below** [1] - 16:19
**bench** [1] - 48:5
**best** [1] - 22:14
**between** [1] - 9:12
**beyond** [5] - 4:17, 16:15, 26:4, 28:20, 46:22
**big** [2] - 21:22, 30:16
**bigger** [2] - 21:13, 21:14
**biggest** [1] - 6:12
**binding** [1] - 36:3
**Binds** [1] - 14:7
**bit** [3] - 6:11, 24:7, 30:15
**blackboard** [2] - 11:6, 11:10
**Blanchard** [2] - 12:23, 42:7
**blanking** [1] - 38:19
**blatantly** [1] - 34:25
**boils** [1] - 10:21
**bona** [1] - 27:18
**break** [1] - 41:23
**brief** [1] - 10:5
**briefing** [1] - 10:9
**briefly** [1] - 46:17
**briefs** [2] - 3:15, 45:3
**bring** [5] - 7:12, 43:17, 45:17, 47:20, 47:22
**bringing** [5] - 23:20, 24:4, 47:1, 47:16, 47:19
**brings** [1] - 30:14
**Brook's** [1] - 14:16
**brought** [31] - 5:7, 6:7, 8:18, 10:19, 11:24, 12:5, 12:10, 12:16, 13:3, 13:6, 14:12, 14:15, 14:18, 18:22, 18:23, 22:18, 23:22, 24:13, 27:17, 29:7, 30:23, 31:15, 40:20, 40:24, 41:9, 41:12, 42:12, 42:15, 43:9, 45:20, 47:20
**bunch** [1] - 37:17
**burden** [2] - 21:21, 22:22
**Burlington** [1] - 1:24
**business** [5] - 18:10, 18:19, 20:7, 21:5, 33:5

**C**

**C-U-P-T-A** [1] - 10:2
**C-U-T-P-A** [1] - 26:11
**campaign** [1] - 18:25
**cannot** [1] - 8:17
**capable** [1] - 24:25
**capacity** [3] - 37:22, 37:23, 38:10
**caps** [1] - 10:2
**carefully** [1] - 41:14
**Carnathan** [6] - 1:22, 3:13, 18:1, 19:7, 43:7, 46:16
**CARNATHAN** [46] - 1:22, 3:12, 17:25, 18:5, 19:10, 19:21, 20:5, 20:11, 20:17, 21:2, 21:7, 21:18, 21:23, 22:12, 23:19, 24:9, 24:15, 25:9, 26:25, 27:15, 28:8, 29:3, 29:5, 29:11, 29:18, 30:6, 30:19, 31:4, 32:3, 33:20, 33:25, 35:5, 35:12, 35:16, 35:20, 36:4, 36:9, 36:19, 37:25, 38:21, 39:22, 41:24, 46:17, 47:9, 47:12, 48:7

**carry** [1] - 6:16
**case** [52] - 4:25, 5:18, 6:3, 6:8, 6:9, 6:23, 7:13, 9:18, 9:22, 10:11, 11:22, 11:25, 12:11, 12:14, 12:15, 12:23, 13:1, 16:6, 16:7, 17:11, 23:6, 23:10, 23:11, 24:17, 24:18, 24:19, 27:9, 27:17, 27:21, 30:2, 32:13, 33:18, 33:22, 34:2, 34:3, 34:9, 34:14, 35:8, 35:19, 36:1, 37:6, 39:9, 39:14, 40:18, 41:1, 42:4, 42:7, 42:18, 42:22, 43:9, 44:17
**cases** [15] - 6:21, 6:22, 13:5, 14:3, 14:4, 14:6, 16:6, 25:5, 25:20, 27:6, 34:1, 39:2, 39:20, 41:16, 47:6
**caused** [1] - 37:17
**causes** [2] - 7:10, 33:3
**caution** [1] - 27:20
**central** [1] - 7:3
**certain** [1] - 34:7
**certainly** [4] - 12:4, 14:9, 24:11, 46:18
**CERTIFICATE** [1] - 48:9
**certify** [1] - 48:11
**changed** [1] - 39:13
**changing** [1] - 30:9
**charitable** [1] - 5:15
**chart** [1] - 10:5
**Chick** [16] - 6:22, 14:1, 14:4, 14:8, 14:10, 15:11, 15:13, 15:19, 15:20, 34:2, 39:3, 39:25, 40:11, 41:13, 42:21
**choice** [2] - 29:19, 34:20
**Choo** [16] - 6:23, 14:1, 14:4, 14:8, 14:11, 15:11, 15:13, 15:19, 15:20, 34:2, 39:3, 39:25, 40:11, 41:13, 42:21, 42:22
**chosen** [1] - 44:9
**cigarette** [1] - 32:15
**Circuit** [37] - 5:12, 6:8, 7:21, 7:22, 11:9, 11:13, 12:13, 12:23, 13:2, 13:4, 13:8, 13:11, 13:12, 13:13, 13:20, 13:22, 13:23, 14:6, 14:9, 15:15, 15:21, 16:13, 17:12, 20:15, 22:11, 36:22, 36:24, 37:1, 37:3, 37:13, 38:10, 39:2, 39:20, 42:4, 42:8, 42:10
**Circuit's** [5] - 9:18, 15:22, 37:9, 42:9, 44:20
**circuits** [2] - 12:13, 30:17
**circumstances** [2] - 41:2, 41:11
**circumstantial** [1] - 44:1
**cite** [2] - 14:6, 15:17
**cited** [2] - 27:7, 37:7
**cites** [3] - 32:13, 40:2, 48:1
**civic** [3] - 5:15, 17:10, 17:17
**Civil** [2] - 28:17, 28:18
**civil** [1] - 27:14
**claim** [26] - 7:4, 7:5, 7:6, 8:5, 10:19, 14:22, 19:12, 20:8, 22:23, 23:23, 26:23, 29:7, 30:4, 31:1, 31:8, 31:9, 31:12, 37:9, 38:24, 39:8, 39:10, 39:15, 40:16, 43:17, 45:4
**claimed** [2] - 21:19, 47:13
**claims** [4] - 4:18, 7:1, 8:2, 8:24, 9:11, 11:18, 15:6, 16:16, 21:24, 23:20, 24:3, 26:6, 26:20, 30:12, 39:8, 40:18, 40:20, 40:24, 41:8, 41:10, 41:19, 43:4, 45:14, 45:15, 45:22, 45:23, 47:1, 47:16, 47:18,

**47:23**
  **clarified** [1] - 41:4
  **clear** [5] - 13:23, 24:19, 26:5, 38:24, 41:16
  **clearest** [1] - 37:8
  **clearly** [4] - 12:1, 23:10, 44:20, 45:7
  **client** [5] - 6:4, 19:24, 21:4, 22:7, 28:25
  **client's** [1] - 8:16
  **clients** [2] - 5:14, 21:5
  **closer** [1] - 42:10
  **Coast** [3] - 40:13, 40:14, 40:17
  **cold** [1] - 22:6
  **collapsed** [1] - 37:17
  **collateral** [31] - 4:15, 4:19, 4:20, 6:19, 6:25, 7:2, 7:8, 7:16, 7:19, 10:10, 11:3, 11:17, 12:1, 12:4, 12:20, 13:1, 14:3, 14:5, 15:3, 17:4, 22:13, 25:1, 26:3, 36:10, 36:14, 42:23, 43:5, 43:21, 44:18, 47:3
  **comfort** [1] - 22:6
  **Commission** [1] - 32:15
  **committed** [1] - 39:16
  **committee** [1] - 23:2
  **common** [2] - 32:22, 32:23
  **common-law** [1] - 32:23
  **companies** [1] - 37:20
  **company** [8] - 18:20, 37:20, 37:22, 38:7, 38:12, 38:14, 41:9
  **Company** [4] - 37:11, 38:4, 40:13
  **competitors** [1] - 33:4
  **complain** [1] - 29:13
  **complained** [1] - 27:25
  **complaint** [9] - 4:4, 7:4, 9:19, 10:14, 11:14, 11:15, 43:5, 44:2, 45:12
  **completely** [1] - 43:8
  **compulsory** [1] - 41:19
  **computer** [1] - 2:4
  **computer-assisted** [1] - 2:4
  **conceivable** [1] - 35:16
  **concept** [1] - 32:24
  **concern** [1] - 24:8
  **concerned** [1] - 24:7
  **conclude** [4] - 8:17, 25:16, 33:13, 35:22
  **concluded** [2] - 11:22, 34:5
  **conduct** [4] - 22:2, 31:18, 45:7, 45:11
  **conducted** [2] - 44:25, 45:8
  **confidential** [2] - 19:3, 32:5
  **confidentiality** [1] - 32:6
  **confront** [1] - 29:20
  **Connecticut** [53] - 4:4, 4:5, 4:16, 4:19, 5:13, 5:16, 5:17, 5:25, 6:6, 7:1, 7:4, 7:6, 7:7, 7:9, 8:4, 9:20, 10:11, 10:17, 10:21, 11:21, 16:14, 17:6, 17:8, 17:18, 20:19, 21:16, 21:19, 23:15, 23:16, 25:7, 26:6, 26:8, 26:9, 26:11, 26:18, 27:2, 27:3, 27:10, 27:17, 28:1, 28:13, 29:1, 29:10, 29:12, 29:21, 29:22, 30:8, 32:14, 35:23, 43:4, 46:7, 46:14
  **Connecticut-based** [2] - 29:12, 29:22
  **conscious** [1] - 44:7
  **consider** [1] - 19:8

**considerable** [1] - 25:8
**constellation** [1] - 32:17
**constitute** [1] - 33:10
**consumed** [1] - 26:23
**consumers** [1] - 33:4
**contact** [1] - 29:17
**contacts** [1] - 29:18
**contention** [1] - 45:9
**context** [2] - 8:1, 8:4
**continuing** [1] - 19:11
**continuum** [1] - 23:7
**contract** [1] - 38:3
**contractor** [1] - 37:14
**contrary** [1] - 37:6
**control** [2] - 21:6, 22:19
**convince** [1] - 46:6
**core** [1] - 24:22
**correct** [9] - 3:18, 11:20, 12:7, 14:17, 20:17, 36:25, 37:9, 48:12
**correctly** [2] - 20:14, 22:14
**costs** [2] - 8:19, 9:6
**counsel** [14] - 3:2, 11:7, 14:16, 14:17, 15:14, 15:17, 15:18, 16:1, 42:5, 42:12, 42:14, 44:15, 45:16, 47:13
**counsel's** [1] - 11:20
**count** [1] - 23:24
**counterclaim** [18] - 8:10, 8:11, 22:17, 22:18, 22:20, 25:15, 30:24, 31:6, 31:7, 31:12, 31:16, 31:20, 31:23, 44:4, 47:21
**counterclaims** [3] - 41:20, 47:19, 48:2
**country** [1] - 23:2
**couple** [4] - 18:23, 27:6, 37:20, 47:25
**course** [3] - 7:8, 8:9, 10:4
**COURT** [76] - 1:1, 3:1, 3:6, 3:9, 3:15, 3:19, 3:22, 3:24, 4:8, 4:12, 4:24, 6:10, 6:15, 8:14, 8:22, 9:2, 9:16, 10:1, 10:23, 13:7, 13:13, 13:16, 13:20, 14:21, 15:1, 15:4, 15:9, 16:10, 17:21, 17:23, 18:4, 19:6, 19:17, 19:22, 20:10, 20:16, 20:25, 21:4, 21:15, 21:22, 22:8, 22:24, 24:6, 24:10, 25:2, 26:21, 27:13, 28:6, 28:25, 29:4, 29:8, 29:16, 30:1, 30:18, 31:3, 31:24, 33:16, 33:21, 35:3, 35:7, 35:13, 35:18, 35:25, 36:7, 36:15, 37:24, 38:20, 39:21, 41:22, 42:1, 43:7, 46:15, 47:8, 47:10, 48:4, 48:9
  **Court** [42] - 2:1, 6:22, 7:17, 9:7, 10:25, 11:12, 13:24, 14:1, 14:5, 14:10, 15:11, 15:12, 16:17, 17:3, 25:21, 27:10, 28:19, 28:22, 33:6, 34:3, 34:5, 34:12, 34:25, 35:4, 35:6, 36:12, 36:13, 37:2, 39:11, 39:24, 41:3, 41:7, 41:12, 42:17, 42:19, 42:21, 42:24, 43:12, 44:16, 44:21, 45:20, 46:12
  **court** [28] - 9:22, 10:1, 11:25, 12:5, 13:17, 17:12, 22:5, 23:8, 23:16, 26:19, 28:1, 28:13, 28:23, 34:17, 34:21, 35:1, 36:17, 38:1, 38:2, 38:9, 38:13, 40:8, 40:9, 40:20, 40:24, 41:12, 44:8
  **Court's** [3] - 7:14, 15:13, 34:23
  **courtroom** [1] - 6:12
  **courts** [7] - 24:24, 25:3, 26:18, 27:2,

**coverage** [4] - 37:15, 37:18, 38:7, 39:17
  **criteria** [3] - 19:20, 32:14, 32:16
  **critical** [1] - 14:13
  **CRR** [2] - 2:1, 48:15
  **crystal** [1] - 26:5
  **crystal-clear** [1] - 26:5
  **culminate** [1] - 10:14
  **CUTPA** [14] - 9:23, 10:1, 12:2, 26:11, 31:5, 31:12, 32:4, 32:9, 32:12, 33:7, 33:10, 45:2, 45:4

## D

**damage** [2] - 37:17, 38:5
  **damages** [3] - 21:15, 21:19, 21:24
  **danger** [2] - 25:10
  **dealt** [1] - 37:14
  **December** [1] - 1:5
  **Deceptive** [1] - 35:8
  **deceptive** [1] - 33:7
  **decide** [6] - 17:3, 24:12, 24:16, 26:15, 26:19, 28:7, 28:9, 46:12
  **decided** [18] - 15:19, 20:14, 22:22, 26:7, 26:13, 34:21, 35:1, 35:4, 35:23, 37:2, 38:2, 38:13, 38:25, 39:4, 39:24, 40:16, 41:15
  **decides** [1] - 40:8
  **deciding** [1] - 17:7
  **decision** [22] - 7:21, 12:24, 25:11, 26:4, 26:17, 27:10, 28:16, 34:25, 36:18, 36:22, 37:12, 39:25, 40:1, 40:2, 40:8, 40:13, 41:3, 41:8, 44:8, 44:21, 46:20, 47:4
  **decisions** [7] - 13:22, 15:16, 15:21, 36:22, 36:24, 42:5, 42:8
  **declared** [1] - 32:20
  **deeper** [1] - 27:3
  **defamatory** [1] - 19:4
  **defaming** [1] - 32:7
  **DEFENDANT** [1] - 1:21
  **defendant** [2] - 27:25, 32:1
  **defendants** [1] - 8:20
  **definitely** [1] - 43:12
  **demonstrated** [1] - 4:17
  **denied** [1] - 40:21
  **denying** [1] - 9:6
  **describe** [2] - 27:8, 31:13
  **described** [1] - 27:16
  **describes** [1] - 28:2
  **description** [1] - 32:12
  **deserves** [1] - 22:21
  **despite** [2] - 5:9, 5:10
  **destroy** [1] - 43:12
  **destroyed** [1] - 18:20
  **determination** [8] - 7:11, 9:10, 11:12, 11:13, 28:12, 28:24, 29:6, 29:24
  **determine** [1] - 19:14
  **determined** [3] - 16:23, 17:19, 34:8
  **determines** [1] - 14:14
  **determining** [1] - 24:25

**devoted** [1] - 25:14
**dicta** [2] - 12:25, 13:1
**dictate** [1] - 36:13
**dies** [1] - 47:4
**difference** [1] - 46:24
**differences** [2] - 11:2, 46:23
**different** [20] - 5:20, 7:25, 11:11, 13:8, 15:20, 19:9, 19:12, 20:23, 29:10, 29:23, 32:10, 34:16, 35:9, 35:10, 35:17, 35:19, 37:20, 39:11, 45:11, 45:16
**differently** [3] - 17:2, 19:18, 28:14
**difficulty** [3] - 22:14, 23:25, 28:9
**dimension** [1] - 5:3
**directly** [4] - 20:12, 20:21, 31:10, 46:21
**disclosed** [1] - 19:3
**discovery** [5] - 6:4, 10:6, 25:7, 43:15, 44:3
**discretion** [15] - 7:14, 12:8, 15:23, 16:4, 17:17, 19:8, 19:13, 22:23, 42:13, 42:14, 45:19, 46:11, 47:5, 47:6, 47:10
**discretionary** [2] - 15:24, 22:17
**discuss** [1] - 42:19
**discussed** [1] - 42:24
**discusses** [2] - 38:18, 42:6
**discussing** [1] - 42:20
**dismissed** [2] - 34:3, 34:9
**disparaging** [1] - 19:1
**disposal** [1] - 18:24
**disposed** [1] - 5:8
**distinction** [2] - 9:12, 38:13
**distinguish** [2] - 19:12, 39:8
**distinguishing** [2] - 7:13, 16:5
**Distress** [2] - 18:14, 18:15
**Distressed** [1] - 18:11
**DISTRICT** [3] - 1:1, 1:1, 1:10
**district** [3] - 12:8, 13:17, 17:12
**DIVISION** [1] - 1:2
**docket** [1] - 22:19
**doctrines** [1] - 47:13
**documents** [1] - 44:1
**dollars** [1] - 18:24
**done** [5] - 4:17, 36:16, 38:5, 45:10, 47:17
**doubt** [1] - 24:7
**dovetails** [1] - 22:12
**down** [3] - 6:11, 8:7, 10:21
**dramatically** [1] - 32:10
**draw** [1] - 35:3
**driving** [1] - 22:3
**dropped** [2] - 5:12, 16:13
**DTPA** [1] - 35:14
**duty** [1] - 32:6

### E

**economy** [2] - 23:13, 23:18
**effect** [2] - 12:17, 27:1
**efficiency** [1] - 23:13
**effort** [1] - 23:14
**either** [4] - 5:25, 17:6, 23:9, 26:21

**elected** [1] - 44:5
**element** [4] - 11:8, 14:5, 47:3
**elements** [1] - 11:10
**Elizabeth** [1] - 1:13
**ELKINS** [1] - 1:13
**ELLISON** [1] - 1:9
**Embalmer** [1] - 27:9
**embracing** [1] - 46:19
**en** [1] - 12:24
**end** [10] - 6:1, 10:15, 11:14, 15:4, 23:9, 26:14, 36:10, 36:11, 41:18, 42:12
**ending** [1] - 39:6
**engaged** [1] - 20:22
**England** [1] - 1:23
**enjoin** [16] - 5:21, 12:10, 12:15, 13:5, 14:11, 14:15, 14:18, 14:20, 17:12, 34:17, 34:19, 38:11, 41:13, 42:11, 42:15, 45:20
**enjoined** [1] - 17:13
**enjoining** [1] - 28:23
**enter** [1] - 7:14
**entered** [2] - 33:14, 34:2
**entertain** [1] - 27:21
**entirely** [1] - 20:23
**entities** [4] - 4:6, 4:14, 5:7, 12:7
**entitled** [3] - 27:4, 46:11, 48:13
**entity** [5] - 20:4, 21:6, 21:11, 29:12, 29:22
**equitable** [4] - 22:20, 25:15, 28:5, 47:20
**equitably** [2] - 8:19, 25:17
**equity** [3] - 21:16, 21:20, 22:21
**equivocal** [1] - 9:4
**especially** [1] - 25:6
**essential** [2] - 27:18, 40:15
**essentially** [5] - 18:18, 25:12, 25:15, 36:1, 38:1
**established** [2] - 32:21, 32:24
**estopped** [1] - 30:9
**estoppel** [31] - 4:15, 4:19, 4:20, 6:19, 6:25, 7:2, 7:8, 7:16, 7:20, 10:10, 11:3, 11:18, 12:1, 12:4, 12:20, 13:1, 14:3, 14:4, 14:5, 15:3, 17:4, 22:13, 25:1, 26:3, 36:10, 36:14, 42:23, 43:6, 43:22, 44:18, 47:3
**ET** [1] - 1:6
**event** [1] - 41:21
**eventually** [1] - 41:5
**evidence** [12] - 8:13, 9:7, 18:6, 39:10, 39:12, 43:14, 43:18, 43:19, 43:23, 44:1, 46:9, 47:15
**evolved** [1] - 42:9
**exactly** [11] - 9:1, 10:24, 13:11, 16:21, 26:4, 27:3, 27:8, 27:15, 28:20, 44:19, 45:10
**example** [2] - 8:6, 9:23
**except** [1] - 18:17
**exception** [19] - 4:23, 5:20, 6:19, 7:20, 8:1, 11:4, 12:9, 13:25, 14:2, 14:12, 14:19, 14:25, 19:15, 24:20, 24:21, 33:17, 34:23, 37:10, 42:24
**exclude** [1] - 39:16

**excuse** [2] - 24:20, 31:7
**Executive** [1] - 1:23
**exercise** [5] - 7:14, 16:2, 19:8, 19:14, 37:2
**exercising** [1] - 17:16
**Exhibit** [1] - 4:7
**existence** [2] - 21:8, 27:18
**exists** [1] - 21:10
**expand** [4] - 25:12, 25:22, 26:1, 46:1
**expansive** [4] - 30:21, 40:5, 47:16, 47:18
**expense** [3] - 5:16, 6:5, 25:8
**explain** [1] - 33:6
**explains** [3] - 27:12, 40:12, 41:14
**explicitly** [1] - 38:22
**extensive** [1] - 22:6
**extent** [12] - 12:2, 30:12, 31:14, 31:17, 31:22, 34:15, 36:20, 37:3
**extra** [1] - 10:8
**extreme** [1] - 23:9

### F

**F3d** [1] - 37:12
**face** [1] - 4:14
**faced** [1] - 17:6
**faces** [1] - 24:1
**fact** [17] - 5:10, 7:22, 9:24, 10:19, 16:9, 16:15, 16:18, 16:25, 20:19, 20:22, 26:6, 28:10, 28:21, 31:21, 32:12, 37:1, 38:6, 42:24, 45:7
**factors** [2] - 19:7, 19:10
**facts** [11] - 10:3, 10:5, 10:14, 14:4, 18:6, 27:18, 27:22, 29:13, 31:6, 39:13, 46:7
**fades** [1] - 7:18
**faith** [17] - 5:7, 7:11, 8:8, 8:13, 8:18, 8:25, 9:8, 11:16, 25:16, 26:16, 43:17, 43:19, 44:5, 45:24, 46:5, 46:9, 47:15
**fall** [1] - 12:20
**falls** [1] - 15:3
**false** [3] - 19:1, 19:5, 32:6
**familiar** [3] - 3:19, 5:17, 6:3, 17:7, 25:5, 48:2
**Fannin** [1] - 1:14
**far** [1] - 44:14
**fatal** [1] - 24:18
**favored** [1] - 38:12
**feature** [1] - 7:13
**features** [1] - 16:6
**fed** [1] - 31:18
**Federal** [2] - 28:16, 32:15
**federal** [40] - 5:7, 5:20, 5:22, 5:23, 8:7, 9:22, 11:16, 11:25, 12:8, 12:11, 14:14, 14:15, 14:19, 16:19, 23:8, 33:22, 34:6, 34:7, 34:16, 34:21, 35:1, 37:25, 38:2, 38:8, 38:13, 40:9, 40:20, 40:21, 40:23, 41:4, 41:10, 42:11, 42:14, 43:15, 44:3, 44:25, 45:8, 45:9, 46:25
**fees** [5] - 8:10, 8:23, 21:14, 23:18, 25:17
**fellow** [1] - 39:16

fide [1] - 27:18
**Fifth** [38] - 5:11, 5:12, 6:8, 7:21, 7:22, 9:18, 11:9, 11:12, 12:23, 13:2, 13:4, 13:8, 13:11, 13:20, 13:22, 13:23, 14:6, 14:9, 15:15, 15:21, 15:22, 16:13, 17:12, 20:14, 22:11, 36:22, 36:24, 36:25, 37:3, 37:9, 37:13, 38:10, 39:2, 39:19, 42:4, 42:8, 42:9, 44:20
**figure** [1] - 26:22
**file** [6] - 4:5, 9:19, 23:3, 23:4, 29:2, 45:5
**filed** [5] - 4:5, 5:14, 8:8, 11:15, 45:13
**filing** [9] - 7:6, 8:7, 9:21, 9:24, 10:15, 19:5, 31:2, 44:25, 45:8
**final** [2] - 15:7, 47:12
**finally** [1] - 17:5
**financial** [2] - 21:14, 43:10
**fired** [1] - 20:9
**firm** [1] - 23:3
**firms** [1] - 23:1
**first** [3] - 23:19, 29:24, 33:18
**fix** [1] - 38:3
**Fogler** [4] - 1:18, 3:8, 24:1
**follows** [1] - 9:21
**Footnote** [1] - 40:3
**footnote** [4] - 12:22, 40:3, 42:6
**FOR** [2] - 1:12, 1:21
**foregoing** [1] - 48:11
**form** [1] - 34:4
**former** [1] - 21:10
**fortunate** [1] - 5:22
**forum** [5] - 5:13, 16:14, 34:9, 34:16, 34:19
**forward** [6] - 23:15, 33:25, 34:17, 37:25, 38:15, 43:17
**FOUNDATION** [1] - 1:6
**four** [2] - 38:18, 38:21
**frankly** [1] - 22:15
**free** [3] - 26:15, 26:25, 29:1
**frivolous** [1] - 8:25
**front** [4] - 5:23, 6:1, 45:6, 46:8
**Fund** [2] - 18:11, 18:14
**fund** [3] - 18:12, 18:16
**funds** [8] - 3:14, 18:10, 20:24, 21:7, 21:12, 21:13, 22:1

## G

**game** [1] - 15:5
**Garwood** [2] - 12:24, 13:3
**GDF** [1] - 21:8
**general** [4] - 18:15, 20:13, 20:22, 37:15
**Gillespie** [1] - 14:7
**Gillespie** [2] - 39:9, 39:14
**given** [1] - 22:6
**glad** [1] - 22:5
**Global** [5] - 18:11, 18:12, 18:14, 18:15, 18:16
**GP** [1] - 8:23
**gravitated** [1] - 13:11

**great** [2] - 20:3, 21:21
**grind** [1] - 20:23
**grounds** [1] - 27:24
**GS** [1] - 3:14
**GSS** [5] - 3:14, 8:23, 18:16, 21:9
**guess** [5] - 9:9, 18:2, 36:6, 43:11, 47:12

## H

**half** [1] - 18:8
**hand** [1] - 23:24
**hardball** [2] - 19:25, 43:10
**hardest** [1] - 36:15
**harm** [2] - 20:3, 47:17
**harmful** [1] - 19:24
**Harris** [1] - 3:8
**HEARING** [1] - 1:8
**hearing** [4] - 4:7, 4:11
**hearings** [1] - 9:6
**heart** [1] - 45:9
**heavy** [1] - 16:3
**held** [2] - 8:12, 41:13
**help** [2] - 4:24, 40:22
**herring** [1] - 30:16
**Higginbotham** [3] - 13:10, 42:6, 42:7
**Higginbotham's** [1] - 12:22
**hindsight** [1] - 44:12
**history** [1] - 25:6
**holding** [1] - 14:10
**home** [3] - 5:13, 16:14, 44:8
**Honor** [92] - 3:4, 3:12, 3:18, 3:21, 4:2, 4:9, 4:21, 5:5, 5:18, 5:25, 6:17, 6:18, 7:3, 7:11, 8:3, 8:9, 8:12, 9:14, 10:4, 10:16, 11:7, 11:17, 12:21, 13:21, 14:7, 15:24, 16:18, 16:20, 16:24, 17:1, 17:19, 17:25, 18:2, 20:14, 22:3, 22:13, 22:20, 22:22, 23:19, 24:1, 24:16, 24:20, 25:10, 25:11, 25:13, 26:3, 26:7, 26:13, 27:8, 27:15, 28:4, 28:9, 29:3, 30:21, 32:10, 32:11, 33:12, 33:13, 33:20, 35:6, 35:17, 35:21, 36:4, 36:23, 39:20, 41:16, 41:24, 42:3, 43:14, 43:16, 43:18, 43:19, 43:23, 44:5, 44:23, 45:4, 45:6, 45:10, 45:24, 46:2, 46:8, 46:11, 46:17, 46:19, 46:21, 47:2, 47:6, 48:2, 48:7
**Honor's** [7] - 5:9, 5:11, 11:25, 12:5, 19:13, 22:16, 47:5
**HONORABLE** [1] - 1:9
**hopscotch** [2] - 6:8, 16:12
**horrible** [1] - 47:23
**HOUSTON** [1] - 1:2
**Houston** [3] - 1:4, 1:14, 2:2
**Houston,Texas** [1] - 1:19
**hundred** [1] - 18:23
**husk** [1] - 21:9

## I

**idea** [1] - 48:3
**identical** [1] - 28:18

**identifies** [1] - 22:14
**identify** [1] - 16:5
**ignore** [1] - 45:21
**immoral** [1] - 33:1
**impact** [1] - 47:21
**import** [1] - 40:12
**important** [2] - 10:7, 40:1
**importantly** [2] - 7:21, 13:14
**improper** [1] - 9:8
**included** [3] - 18:25, 19:2, 19:5
**including** [1] - 6:21
**incorrect** [3] - 25:11, 37:4, 42:16
**indeed** [3] - 13:25, 45:2, 45:12
**indemnify** [1] - 8:19
**independent** [1] - 26:23
**indicated** [1] - 13:5
**indicating** [1] - 42:9
**indirectly** [3] - 20:13, 20:21, 31:11
**individual** [3] - 37:23, 38:9, 38:14
**inelegantly** [1] - 36:6
**inflict** [1] - 20:3
**information** [1] - 19:3
**inherent** [1] - 22:19
**initial** [2] - 41:10, 45:12
**injections** [1] - 34:1
**injunction** [22] - 3:16, 3:17, 4:3, 4:23, 6:9, 7:14, 16:3, 16:8, 34:3, 34:12, 38:11, 38:23, 40:10, 40:22, 40:25, 41:6, 42:22, 45:13, 47:4, 47:7
**Injunction** [5] - 12:9, 19:16, 24:21, 24:23, 43:3
**injunctions** [1] - 13:2
**injunctive** [4] - 16:1, 19:15, 30:22, 37:3
**injury** [1] - 33:4
**innocent** [1] - 43:9
**inquiry** [1] - 26:15
**inside** [1] - 24:11
**instead** [1] - 46:13
**instituted** [1] - 23:2
**insurance** [3] - 37:18, 38:12, 39:15
**insured** [1] - 38:6
**intend** [1] - 21:12
**intended** [2] - 15:11, 16:22
**intention** [1] - 20:6
**intentional** [1] - 44:6
**interest** [1] - 17:16
**interesting** [3] - 12:6, 29:15, 38:16
**interestingly** [2] - 28:15, 35:2
**interference** [1] - 45:14
**interpret** [1] - 28:14
**interrupt** [1] - 19:6
**intervening** [1] - 41:2
**intrude** [1] - 36:12
**INVESTMENTS** [1] - 1:21
**Investments** [2] - 3:13, 21:25
**investors** [2] - 21:17, 21:20
**invited** [2] - 25:12, 25:25
**involved** [5] - 20:13, 20:21, 23:6, 28:16, 31:11
**issue** [23] - 7:2, 7:3, 14:13, 14:14, 20:12, 30:17, 34:20, 37:1, 39:13, 40:9,

40:16, 42:18, 42:20, 43:20, 44:10, 44:13, 45:21, 45:24, 46:10, 46:13, 47:7, 47:14
   **itself** [1] - 27:4

## J

**Jackson** [2] - 12:25
**job** [1] - 24:1
**Johnny** [3] - 2:1, 48:11, 48:15
**Jonathan** [1] - 18:1
**judge** [15] - 5:17, 5:20, 5:22, 5:23, 5:25, 14:14, 14:19, 16:19, 17:6, 23:16, 26:21, 28:7, 33:18, 42:11, 42:14
**Judge** [6] - 12:21, 12:24, 13:3, 13:10, 42:5, 42:7
**JUDGE** [1] - 1:10
**judges** [1] - 12:8
**judgment** [9] - 8:17, 26:17, 27:1, 27:21, 32:12, 33:15, 34:24, 45:7, 46:4
**judicata** [27] - 4:15, 4:20, 6:20, 10:10, 11:19, 11:23, 12:18, 13:24, 14:18, 17:3, 17:7, 24:25, 30:10, 30:15, 30:20, 30:24, 31:16, 31:23, 36:10, 40:5, 40:8, 41:17, 41:21, 42:23, 43:2, 43:4, 48:1
**judicial** [2] - 6:7, 16:11
**judicially** [1] - 30:9
**jurisdiction** [2] - 29:19, 29:23
**jurisprudence** [2] - 13:20, 35:10
**justify** [1] - 27:23

## K

**Kam** [16] - 6:22, 14:1, 14:4, 14:8, 14:11, 15:11, 15:13, 15:19, 15:20, 34:2, 39:3, 39:25, 40:11, 41:13, 42:21, 42:22
**KEITH** [1] - 1:9
**kept** [1] - 15:6
**kind** [2] - 6:7, 37:16
**Kirkland** [3] - 37:11, 38:16, 42:4
**knock** [1] - 9:11
**knowledge** [1] - 27:22
**knows** [3] - 6:18, 42:19, 46:2

## L

**labels** [1] - 45:11
**lack** [1] - 27:12
**Landmark** [1] - 32:13
**language** [5] - 9:4, 15:25, 28:19, 39:3, 44:16
**largely** [2] - 43:8
**last** [1] - 17:23
**law** [23] - 7:7, 15:22, 23:1, 25:12, 26:8, 27:19, 29:9, 29:10, 29:11, 29:19, 29:20, 29:21, 29:23, 29:25, 30:8, 32:14, 32:22, 32:23, 34:6, 34:20, 38:24, 40:23, 40:24
**lawful** [1] - 27:24
**lawsuit** [16] - 5:14, 7:6, 8:4, 8:7, 8:8, 8:18, 9:25, 10:6, 11:16, 20:6, 20:19, 31:25, 43:16, 44:3,

**lawyers** [1] - 24:10
**lawyers'** [1] - 23:18
**lead** [5] - 9:5, 10:14, 21:13, 21:14, 25:11
**learned** [1] - 25:24
**least** [2] - 32:23, 35:9
**leave** [2] - 4:5, 9:19
**left** [2] - 18:17, 45:15
**legal** [15] - 7:9, 7:10, 7:19, 7:23, 10:16, 10:21, 11:1, 12:6, 14:13, 14:14, 20:3, 44:14, 44:18, 45:16, 45:22
**lengthy** [2] - 12:22, 42:6
**less** [1] - 25:14
**level** [2] - 21:10, 30:19
**liability** [1] - 37:15
**liable** [3] - 26:8, 26:9, 26:10
**life** [1] - 39:15
**light** [2] - 8:15, 25:23
**lightly** [1] - 23:21
**likelier** [1] - 23:14
**limited** [4] - 14:25, 19:2, 25:20, 25:24
**line** [1] - 39:23
**liquidated** [1] - 18:17
**listen** [1] - 30:5
**litigate** [4] - 6:5, 35:13, 35:14, 46:14
**litigated** [9] - 7:3, 12:19, 15:1, 15:2, 25:2, 44:10, 44:12, 45:25, 46:10
**litigating** [3] - 5:16, 17:18, 21:6
**litigation** [25] - 6:1, 7:5, 9:11, 10:15, 10:18, 10:20, 11:21, 11:24, 18:18, 18:21, 19:11, 19:25, 21:23, 23:4, 23:7, 23:20, 23:22, 24:13, 26:8, 27:11, 29:9, 30:23, 31:14, 31:15, 33:17
**LLC** [1] - 1:22
**Look** [1] - 44:21
**look** [10] - 7:23, 11:11, 16:17, 22:20, 25:21, 39:7, 39:23, 39:24, 39:25, 40:3
**looked** [1] - 14:5
**looking** [3] - 18:9, 28:12, 37:18
**looks** [3] - 8:3, 39:11, 44:11
**lose** [3] - 29:6, 37:4, 43:20
**loss** [1] - 38:7
**losses** [3] - 22:1, 22:4, 22:6
**lost** [5] - 28:25, 37:1, 38:1, 38:8
**LP** [1] - 1:21
**LPs** [2] - 31:20, 47:21
**LTD** [1] - 1:4

## M

**MACK** [1] - 1:22
**magnitude** [1] - 36:18
**malicious** [1] - 9:12
**maligning** [1] - 31:19
**management** [1] - 20:2
**manager** [1] - 21:25
**managing** [1] - 18:7
**mandatory** [1] - 41:19
**manifestly** [2] - 35:17, 35:21
**manner** [1] - 27:25
**manners** [1] - 13:18

**MARGARET** [1] - 1:6
**Maria** [1] - 1:13
**Marie** [1] - 3:4
**maritime** [1] - 34:4
**mark** [1] - 4:3
**marked** [1] - 4:6
**Massachusetts** [1] - 1:24
**matter** [10] - 3:25, 5:8, 8:9, 22:17, 22:23, 30:20, 41:18, 44:22, 46:14, 48:13
**McKinney** [1] - 1:19
**mean** [9] - 9:10, 15:5, 20:1, 22:9, 22:24, 23:9, 27:13, 36:16, 40:5, 43:21, 44:12, 47:10, 47:11
   **means** [3] - 6:2, 6:4, 14:19
   **meant** [1] - 25:13
**mechanical** [1] - 2:4
**mental** [1] - 43:25
**mention** [1] - 9:24
**mentioned** [1] - 42:5
**merit** [2] - 16:7, 23:12
**meritorious** [1] - 23:10
**merits** [1] - 29:6
**message** [1] - 24:23
**met** [2] - 19:20, 32:17
**might** [6] - 16:7, 25:22, 26:18, 28:14, 34:7, 34:15
**mike** [2] - 3:10, 4:1
**million** [1] - 18:24
**mind** [5] - 13:17, 24:12, 28:4, 36:9, 43:24
   **minds** [1] - 30:10
**minimum** [2] - 29:17, 29:18
**minor** [1] - 7:18
**misconduct** [1] - 33:9
**missing** [1] - 5:2
**mitigate** [1] - 47:21
**mixing** [1] - 47:13
**money** [2] - 17:8, 17:18
**Moore** [1] - 14:7
**morning** [3] - 3:12, 17:25, 42:13
**most** [2] - 6:22, 31:5
**motion** [12] - 4:4, 8:10, 8:16, 9:3, 9:4, 9:19, 9:20, 16:21, 45:5, 45:6, 46:4, 47:3
**motive** [1] - 9:8
**motives** [1] - 24:5
**moved** [1] - 45:13
**MR** [45] - 3:12, 17:25, 18:5, 19:10, 19:21, 20:5, 20:11, 20:17, 21:2, 21:7, 21:18, 21:23, 22:12, 23:19, 24:9, 24:15, 25:9, 26:25, 27:15, 28:8, 29:3, 29:5, 29:11, 29:18, 30:6, 30:19, 31:4, 32:3, 33:20, 33:25, 35:5, 35:12, 35:16, 35:20, 36:4, 36:9, 36:19, 37:25, 38:21, 39:22, 41:24, 46:17, 47:9, 47:12, 48:7
   **MS** [29] - 3:4, 3:7, 3:18, 3:21, 3:23, 4:2, 4:9, 4:13, 5:4, 6:14, 6:17, 8:21, 9:1, 9:14, 9:17, 10:3, 10:24, 13:10, 13:14, 13:19, 13:21, 14:23, 15:2, 15:8, 15:10, 16:11, 17:22, 42:3, 43:14
**Murray** [2] - 1:18, 3:8
**must** [3] - 5:2, 19:7, 27:22

## N

**name** [2] - 17:23, 18:1
**narrow** [2] - 16:2, 16:3
**narrowly** [1] - 24:22
**near** [4] - 3:10, 3:25, 5:17, 6:3
**necessarily** [1] - 32:20
**necessary** [1] - 39:6
**need** [5] - 6:15, 13:22, 25:7, 29:16, 32:16
**needed** [1] - 30:5
**negative** [1] - 32:1
**never** [10] - 12:8, 12:15, 14:11, 14:17, 15:6, 18:22, 26:7, 26:13, 36:16
**nevertheless** [1] - 10:13
**New** [7] - 1:23, 29:1, 29:8, 29:11, 30:3, 30:4, 30:5
**new** [2] - 15:6, 15:14
**Nicholson** [2] - 1:13, 3:8
**Ninth** [3] - 12:13, 13:12, 42:10
**ninth** [1] - 13:13
**nonconvenience** [2] - 34:4, 34:16
**none** [1] - 14:9
**nonetheless** [1] - 36:2
**normally** [2] - 35:7, 35:9
**notes** [1] - 33:9
**nothing** [2] - 18:17, 31:24
**notice** [1] - 31:10
**nucleus** [2] - 31:6, 31:21
**number** [2] - 23:23, 33:3
**Number** [3] - 32:19, 32:25, 33:1

## O

**O'CONNOR** [1] - 1:22
**obligate** [1] - 47:22
**obligated** [1] - 47:20
**obviously** [3] - 16:23, 23:10, 36:15
**October** [1] - 4:11
**OF** [1] - 1:1
**offender** [1] - 6:12
**offends** [1] - 32:21
**often** [1] - 5:20
**once** [5] - 5:6, 7:11, 40:8, 41:17, 45:25
**one** [25] - 5:24, 13:4, 13:9, 16:17, 17:23, 21:4, 21:5, 23:24, 24:11, 24:23, 26:21, 26:24, 32:17, 32:19, 34:3, 36:2, 36:19, 37:6, 37:14, 37:22, 39:2, 40:1, 42:5, 42:8, 47:11
**open** [1] - 40:6
**operation** [1] - 20:23
**opponent** [1] - 20:7
**opportunity** [5] - 10:12, 17:20, 30:11, 43:16, 46:6
**opposing** [3] - 15:17, 16:1, 42:13
**oppressive** [1] - 33:2
**order** [4] - 9:2, 25:13, 34:18, 37:2
**orders** [1] - 16:25
**ordinary** [1] - 27:20
**organization** [3] - 17:10, 17:18, 18:23
**organizations** [1] - 5:15

**originally** [4] - 5:11, 34:11, 38:12, 45:13
**otherwise** [3] - 13:15, 32:22, 34:8
**ought** [4] - 28:7, 46:12, 46:13
**overall** [1] - 18:25
**overenthusiastic** [1] - 36:21
**overrule** [1] - 40:10
**overruled** [3] - 13:8, 15:18, 36:22
**overrules** [1] - 15:15
**own** [2] - 27:3, 38:6
**owns** [1] - 18:14

## P

**page** [1] - 25:14
**Pages** [2] - 33:11, 38:22
**paid** [2] - 38:5
**painfully** [1] - 24:19
**panel** [4] - 13:4, 13:22, 15:15, 42:8
**panels** [1] - 14:10
**paper** [1] - 46:3
**papers** [3] - 27:7, 36:20, 37:8
**paragraph** [1] - 9:23
**Park** [1] - 1:23
**parse** [1] - 8:14
**Parsons** [3] - 40:2, 40:7, 42:18
**part** [8] - 4:13, 18:25, 23:25, 28:8, 30:2, 31:21, 34:22, 36:15
**partial** [1] - 34:2
**particular** [1] - 39:25
**particularly** [1] - 4:25
**parties** [5] - 4:4, 4:10, 11:15, 19:18, 25:6
**partly** [1] - 31:13
**partner** [4] - 3:7, 18:15, 20:14, 20:22
**partners** [1] - 19:2
**party** [5] - 17:13, 18:8, 22:1, 27:17, 30:3
**pending** [1] - 26:19
**Penelope** [2] - 1:13, 3:8
**Penny** [1] - 3:7
**penumbra** [1] - 32:23
**people** [5] - 20:1, 20:2, 33:5
**per** [5] - 4:18, 16:15, 26:4, 28:20, 46:22
**perceived** [1] - 22:15
**percent** [1] - 18:14
**perfectly** [3] - 24:3, 24:4, 24:25
**perhaps** [3] - 13:2, 13:14, 36:21
**permanent** [1] - 3:16, 4:3
**permissive** [5] - 31:5, 31:20, 31:22, 47:19, 48:1
**person** [5] - 23:14, 27:20, 27:22, 27:23, 32:7
**personal** [2] - 5:2, 29:19
**phase** [1] - 45:24
**phases** [1] - 11:2
**phonetic** [1] - 12:13
**picket** [2] - 40:21, 41:4
**picketed** [1] - 40:19
**piece** [3] - 39:24, 41:15, 41:18

**place** [2] - 39:5, 39:6
**plainly** [1] - 9:20
**plaintiff** [5] - 3:3, 8:20, 31:25, 34:20, 35:23
**PLAINTIFF** [1] - 1:12
**plaintiffs** [4] - 3:5, 5:10, 34:10, 34:24
**Plaintiffs'** [1] - 4:6
**plaintiffs'** [4] - 8:24, 31:7, 31:8
**play** [1] - 19:14
**plead** [1] - 10:11
**pleaded** [7] - 8:2, 8:5, 44:2, 44:22, 45:23, 46:7
**pleading** [3] - 44:24, 45:3
**pleadings** [1] - 4:15
**pocket** [1] - 38:6
**podium** [1] - 3:23
**point** [14] - 19:9, 22:14, 23:12, 23:17, 24:17, 25:4, 29:5, 30:7, 30:11, 36:5, 36:19, 39:3, 40:2, 47:12
**points** [1] - 19:19
**poised** [1] - 16:12
**policy** [4] - 32:21, 33:9, 37:15, 39:15
**portfolio** [1] - 21:25
**position** [2] - 24:19, 42:9
**possibility** [1] - 40:7
**possible** [1] - 13:5
**power** [4] - 19:15, 30:22, 37:3, 42:11
**powers** [1] - 22:19
**practice** [4] - 7:7, 32:19, 33:8
**practices** [1] - 10:19
**Practices** [3] - 8:5, 26:12, 35:8
**precisely** [3] - 21:2, 24:15, 24:17
**preclude** [2] - 7:19, 11:3
**preclusion** [3] - 37:10, 47:14
**preclusive** [1] - 27:1
**preferred** [1] - 16:13
**prerequisite** [1] - 40:16
**press** [3] - 19:3, 31:19, 31:25
**presumably** [2] - 21:16, 27:2
**pretext** [1] - 21:1
**pretty** [1] - 41:14
**prevent** [1] - 34:24
**prevents** [1] - 31:25
**previous** [1] - 33:17
**previously** [3] - 13:9, 18:10, 32:20
**principal** [1] - 18:7
**probable** [2] - 27:12, 27:13
**problem** [1] - 6:11
**procedural** [1] - 41:2
**Procedure** [3] - 28:17, 28:18
**proceed** [1] - 36:17
**proceeding** [3] - 21:19, 33:19, 41:10
**Proceedings** [1] - 2:4
**proceedings** [3] - 28:23, 36:12, 48:12
**process** [7] - 7:5, 9:13, 10:18, 12:3, 18:11, 20:3, 23:4, 26:10, 29:9, 31:1
**produced** [1] - 2:4
**Professor** [1] - 12:14
**promptly** [3] - 34:10, 38:9, 40:23
**prong** [8] - 6:19, 6:20, 6:25, 12:17, 13:24, 14:6, 42:23, 43:2
**prongs** [7] - 6:18, 6:21, 6:24, 14:2,

38:18, 38:21, 42:25
**pronounced** [1] - 18:1
**proof** [3] - 43:17, 44:11, 46:8
**proprietor** [1] - 37:19
**prosecute** [1] - 30:12
**prosecuting** [1] - 27:24
**prosecution** [1] - 9:13
**protect** [1] - 34:23
**prove** [4] - 43:21, 43:24, 43:25, 46:5
**proved** [1] - 44:4
**prudence** [1] - 27:20
**public** [3] - 17:15, 32:21, 33:8
**punitive** [1] - 22:25
**purportedly** [2] - 20:8, 20:11
**purpose** [4] - 24:13, 24:14, 34:22, 35:15
**pursue** [2] - 22:8, 22:10
**put** [9] - 3:9, 4:10, 6:5, 8:1, 11:6, 11:10, 45:11, 46:8, 47:15
**puts** [1] - 8:4

## Q

**quote** [3] - 8:17, 8:24, 9:7
**quotes** [1] - 39:3

## R

**Rail** [2] - 40:13, 40:14
**railroad** [3] - 40:19, 40:23, 41:9
**ran** [2] - 40:23, 41:11
**rather** [1] - 38:4
**reach** [4] - 40:4, 40:6, 40:7, 43:3
**reaching** [2] - 26:4, 32:11
**read** [8] - 3:15, 9:18, 9:22, 10:7, 10:13, 12:21, 32:9, 44:24
**reading** [1] - 11:13
**reads** [1] - 42:7
**ready** [1] - 36:23
**real** [3] - 25:10, 26:2, 41:8
**really** [16] - 5:4, 8:6, 20:19, 25:24, 26:15, 28:11, 33:13, 33:17, 36:18, 36:22, 37:7, 40:17, 41:18, 44:15, 46:21, 46:24
**reason** [3] - 38:1, 45:3, 45:4
**reasonable** [1] - 27:23
**reasserted** [1] - 35:24
**received** [1] - 34:12
**recent** [1] - 6:22
**recently** [1] - 6:23
**Recessed** [2] - 41:25, 48:8
**reconsider** [1] - 16:21
**reconsideration** [4] - 8:11, 9:3, 9:5, 45:6
**record** [3] - 5:21, 16:23, 48:12
**recorded** [1] - 2:4
**recoverage** [5] - 7:22, 9:18, 11:5, 11:9, 44:21
**red** [1] - 30:15
**REDDEN** [1] - 1:18
**reduced** [1] - 21:9

**reflection** [1] - 23:16
**refrain** [1] - 28:22
**refuse** [1] - 47:7
**regulators** [2] - 19:5, 31:19
**reject** [1] - 22:23
**rejected** [2] - 28:4, 34:6
**rejection** [2] - 22:17, 25:16
**relatively** [1] - 25:13
**relief** [1] - 15:6
**relies** [1] - 16:1
**relitigating** [1] - 34:20, 34:25
**relitigation** [4] - 4:22, 5:19, 6:9, 6:18, 6:20, 7:20, 8:1, 11:4, 12:9, 12:17, 13:25, 14:2, 14:11, 14:18, 14:25, 19:15, 24:21, 34:23, 37:10, 42:24, 46:13
**remain** [1] - 21:8
**remained** [1] - 20:12
**remember** [4] - 4:12, 15:12, 17:11, 20:10
**repairing** [1] - 37:16
**replace** [1] - 20:2
**replead** [1] - 4:16
**reply** [2] - 10:5, 16:8
**report** [1] - 19:5
**reporter** [1] - 10:1
**Reporter** [1] - 2:1
**REPORTER'S** [1] - 48:9
**request** [1] - 23:20
**requests** [1] - 22:25
**require** [1] - 6:4
**rerun** [1] - 15:12
**res** [27] - 4:15, 4:20, 6:20, 10:9, 11:19, 11:23, 12:18, 13:24, 14:18, 17:3, 17:7, 24:25, 30:10, 30:14, 30:20, 30:24, 31:16, 31:23, 36:10, 40:4, 40:8, 41:17, 41:20, 42:23, 43:2, 43:4, 48:1
**research** [1] - 26:22
**resembles** [1] - 28:3
**reserve** [1] - 18:18
**respect** [5] - 9:25, 24:23, 25:4, 28:23, 45:2
**respectability** [1] - 24:2
**respectfully** [3] - 19:13, 26:14, 47:2
**response** [1] - 23:17
**result** [1] - 38:23
**resulting** [1] - 22:1
**retaining** [3] - 37:16, 37:17, 38:3
**return** [3] - 21:14, 21:16, 21:20
**review** [2] - 23:2, 23:5
**rights** [1] - 38:14
**risk** [1] - 21:22
**RMR** [2] - 2:1, 48:15
**roughly** [1] - 39:10
**RPR** [1] - 2:1
**rule** [9] - 6:1, 23:14, 28:22, 32:15, 33:22, 33:23, 43:13, 45:21, 48:5
**Rule** [4] - 9:3, 9:6, 28:16, 28:18
**ruled** [9] - 5:6, 7:11, 8:9, 8:10, 11:17, 16:10, 16:19, 43:18, 46:3
**ruling** [2] - 5:11, 46:4
**rulings** [2] - 5:9, 46:2
**running** [2] - 18:15, 46:18

**Rusk** [1] - 2:2

## S

**Sanchez** [3] - 2:1, 48:11, 48:15
**sanctions** [6] - 9:3, 9:6, 22:25, 23:3, 23:21, 23:23
**Scott** [2] - 18:7, 47:24
**scurry** [1] - 47:25
**Seaman** [7] - 18:7, 18:13, 20:20, 21:9, 24:3, 24:12, 47:24
**Seaman's** [1] - 21:5
**Sean** [3] - 1:22, 3:12, 18:1
**second** [1] - 33:18
**secondary** [1] - 25:4
**SECREST** [1] - 1:18
**secretive** [3] - 43:11
**secured** [1] - 41:6
**see** [6] - 7:4, 12:12, 16:19, 23:8, 23:12
**seeking** [1] - 4:2
**seem** [2] - 19:18, 22:9
**self** [2] - 21:10, 40:22
**self-help** [1] - 40:22
**semantics** [2] - 10:23, 10:25
**sense** [2] - 13:15, 17:17
**separate** [1] - 45:18
**series** [2] - 15:21, 42:8
**serves** [1] - 35:15
**set** [3] - 16:8, 32:14, 42:18
**several** [1] - 13:4
**shade** [1] - 45:24
**shades** [2] - 7:18, 11:2
**short** [3] - 3:20, 25:13, 41:23
**shoulder** [1] - 21:20
**show** [2] - 18:7, 47:6
**showed** [1] - 10:4
**side** [1] - 27:14
**sides** [2] - 24:7, 24:11
**sight** [2] - 37:1, 37:4
**similar** [1] - 35:15
**similarly** [1] - 17:10
**simply** [1] - 20:25
**Singapore** [4] - 34:5, 34:6, 34:8, 34:18
**single** [1] - 33:9
**sit** [1] - 3:24
**situated** [1] - 17:10
**situation** [2] - 17:5, 20:25
**Situations** [3] - 3:14, 18:12, 18:16
**slightly** [1] - 35:18
**slow** [2] - 6:11, 6:14
**smacks** [1] - 6:7
**Smith** [21] - 6:23, 7:17, 11:1, 13:25, 15:11, 15:12, 15:14, 15:15, 15:18, 15:20, 15:25, 24:17, 24:18, 24:19, 25:19, 26:14, 28:15, 36:21, 44:16, 46:20, 47:4
**sole** [1] - 37:19
**somewhat** [2] - 9:4, 22:6
**somewhere** [1] - 29:17
**sorry** [1] - 6:20
**sort** [3] - 29:14, 39:9, 40:9

**sounds** [1] - 28:10
**SOUTHERN** [1] - 1:1
**sovereign** [2] - 27:4, 36:13
**sovereign's** [1] - 36:12
**speaking** [2] - 3:25, 32:7
**Special** [2] - 18:12, 18:16
**specific** [3] - 9:23, 9:24, 16:5
**specifically** [1] - 18:9
**spend** [2] - 17:8, 17:18
**split** [2] - 12:12, 30:16
**springboard** [1] - 21:13
**stand** [2] - 3:24, 18:19
**standard** [32] - 7:9, 7:10, 7:19, 9:15, 10:16, 10:21, 11:1, 13:9, 26:3, 26:5, 26:16, 27:11, 28:2, 28:4, 28:12, 32:4, 32:9, 32:11, 33:14, 34:16, 35:11, 35:22, 35:23, 44:14, 44:22, 45:23, 46:18, 46:19, 46:25, 47:1
**standards** [9] - 7:23, 11:6, 27:4, 27:5, 27:8, 35:17, 44:18, 45:17, 46:22
**start** [2] - 18:2, 42:4
**started** [1] - 22:1
**starting** [2] - 3:3, 39:5
**state** [21] - 19:5, 24:24, 25:2, 26:19, 27:2, 28:23, 31:18, 34:11, 34:15, 35:8, 35:14, 36:17, 38:9, 40:8, 40:24, 41:10, 41:12, 43:25, 46:25
**state's** [1] - 35:10
**statement** [3] - 32:0, 37:8, 37:13
**statements** [3] - 19:1, 19:2, 19:4
**STATES** [2] - 1:1, 1:10
**statue** [1] - 35:9
**statute** [1] - 35:15
**statutes** [2] - 32:22, 34:7
**statutory** [2] - 19:20, 32:23
**stenography** [1] - 2:4
**still** [8] - 5:1, 18:3, 18:5, 21:10, 22:4, 29:20, 38:23, 39:13
**stipulation** [2] - 4:10, 4:13
**story** [1] - 18:3
**street** [2] - 40:24, 41:11
**strictly** [1] - 24:22
**strong** [2] - 9:7, 27:23
**strongest** [1] - 8:16
**strongly** [1] - 22:9
**studied** [1] - 36:24
**studies** [2] - 41:16, 46:19
**study** [1] - 39:1
**stuff** [1] - 46:6
**submission** [1] - 20:24
**submit** [1] - 33:12
**subsequent** [1] - 41:3
**substantial** [1] - 33:4
**successful** [1] - 18:10
**successfully** [1] - 18:13
**suddenly** [1] - 38:18
**sued** [2] - 34:10, 38:9
**suffered** [1] - 22:7
**sufficient** [3] - 8:13, 39:6, 47:15
**sufficiently** [1] - 9:7
**suggest** [1] - 44:23
**suggests** [1] - 45:10

**suicide** [2] - 39:14, 39:16
**suing** [1] - 37:15
**suit** [6] - 5:7, 9:13, 14:16, 23:15, 45:8, 45:9
**Suite** [3] - 1:14, 1:19, 1:23
**summary** [6] - 8:17, 26:17, 32:12, 33:14, 45:7, 46:4
**Supply** [1] - 27:9
**supposed** [2] - 21:12, 28:11
**Supreme** [18] - 6:22, 7:17, 10:25, 13:24, 14:1, 14:5, 14:10, 15:10, 15:13, 16:17, 34:12, 35:6, 39:24, 41:3, 41:7, 41:12, 42:17, 44:16
**surely** [2] - 31:24, 41:9

# T

**teed** [1] - 42:17
**temporary** [1] - 3:17
**termination** [1] - 31:9
**terms** [7] - 6:21, 6:24, 23:13, 23:18, 30:16, 42:10, 47:5
**test** [5] - 26:2, 38:17, 39:5, 39:7, 39:18
**tests** [1] - 39:12
**TEXAS** [1] - 1:1
**Texas** [10] - 1:4, 1:14, 2:2, 18:22, 34:11, 34:15, 35:13, 35:22, 47:22
**text** [1] - 15:20
**textually** [1] - 28:17
**THE** [76] - 1:9, 1:12, 3:1, 3:6, 3:9, 3:15, 3:19, 3:22, 3:24, 4:8, 4:12, 4:24, 6:10, 6:15, 8:14, 8:22, 9:2, 9:16, 10:1, 10:23, 13:7, 13:13, 13:16, 13:20, 14:21, 15:1, 15:4, 15:9, 16:10, 17:21, 17:23, 18:4, 19:6, 19:17, 19:22, 20:10, 20:16, 20:25, 21:4, 21:15, 21:22, 22:8, 22:24, 24:6, 24:10, 25:2, 26:21, 27:13, 28:6, 28:25, 29:4, 29:8, 29:16, 30:1, 30:18, 31:3, 31:24, 33:16, 33:21, 35:3, 35:7, 35:13, 35:18, 35:25, 36:7, 36:15, 37:24, 38:20, 39:21, 41:22, 42:1, 43:7, 46:15, 47:8, 47:10, 48:4
**theoretical** [1] - 30:1
**theory** [1] - 14:21
**therefore** [6] - 11:23, 12:19, 30:24, 38:15, 47:2, 47:15
**they've** [4] - 4:16, 10:12, 16:13, 45:10
**thinking** [1] - 25:23
**thinks** [2] - 17:1, 45:16
**three** [14] - 4:14, 4:16, 5:6, 7:12, 10:8, 11:18, 16:10, 18:8, 32:16, 32:17, 32:18, 33:3, 45:25
**three-year** [1] - 18:8
**title** [1] - 35:3
**today** [4] - 17:19, 18:19, 24:16, 36:23
**together** [1] - 47:13
**took** [1] - 18:13
**tortious** [1] - 45:14
**total** [1] - 8:6
**toward** [1] - 23:9
**towards** [1] - 13:11
**town** [1] - 23:1

**trade** [2] - 7:7, 10:19
**Trade** [3] - 8:5, 26:12, 32:15
**transaction** [1] - 30:3
**transactional** [2] - 38:17, 39:5, 39:7, 39:12, 39:17
**transcript** [1] - 48:12
**Transcript** [1] - 2:4
**transcription** [1] - 2:4
**treatise** [1] - 12:14
**tremendous** [1] - 22:4
**trial** [1] - 5:1
**tried** [3] - 8:14, 16:5, 41:5
**trivial** [1] - 46:23
**true** [3] - 12:17, 42:17, 46:23
**truthfully** [1] - 28:9
**try** [5] - 20:1, 20:2, 26:15, 47:21, 48:5
**trying** [8] - 5:15, 10:20, 15:4, 19:22, 26:22, 30:16, 36:5, 36:8
**Tucker** [1] - 14:16
**TUCKERBROOK** [1] - 1:21
**Tuckerbrook** [14] - 3:2, 4:6, 4:14, 12:7, 18:9, 18:10, 18:18, 18:19, 19:4, 20:24, 21:10, 21:24, 43:12, 47:17
**Tukerbrook** [1] - 3:13
**turn** [2] - 3:1, 42:2
**turns** [1] - 7:9
**two** [14] - 5:24, 6:18, 6:21, 6:22, 6:24, 7:23, 14:2, 16:25, 18:8, 18:10, 21:18, 33:1, 35:17, 40:12
**two-and-a-half** [1] - 18:8
**type** [1] - 18:25

# U

**U.S** [4] - 6:22, 7:17, 40:14, 42:17
**ulterior** [1] - 24:4
**ultimate** [1] - 8:6
**ultimately** [1] - 44:25
**under** [24] - 4:22, 5:19, 6:25, 7:7, 7:16, 12:9, 12:20, 15:3, 19:15, 21:5, 22:18, 25:11, 26:8, 26:14, 27:19, 29:24, 33:17, 35:10, 35:14, 37:15, 40:23, 48:5
**underlying** [4] - 11:22, 11:25, 12:11, 20:7
**underserved** [1] - 24:2
**unethical** [1] - 33:2
**Unfair** [2] - 8:5, 26:11
**unfair** [2] - 7:7, 10:19
**unfairness** [1] - 32:24
**unfortunately** [1] - 5:9
**union** [3] - 40:19, 40:22, 41:5
**uNITED** [1] - 1:1
**UNITED** [1] - 1:10
**university** [2] - 17:11, 17:14
**unlawful** [1] - 32:20
**unless** [3] - 28:20, 28:21, 39:20
**unlike** [1] - 16:6
**unscrupulous** [1] - 33:2
**unusual** [1] - 4:25
**up** [5] - 7:12, 10:14, 11:6, 11:10, 42:18
**upshot** [1] - 34:14

## V

**vacated** [3] - 34:13, 38:11, 41:7
**valid** [1] - 30:13
**variations** [2] - 7:18, 44:19
**Vasquez** [6] - 6:8, 13:4, 14:7, 15:17, 15:18, 15:19
**veneer** [1] - 24:2
**venture** [2] - 16:16, 26:5
**verbally** [1] - 36:2
**versus** [6] - 3:2, 7:17, 11:1, 13:25, 15:25, 44:16
**vexatious** [16] - 7:5, 9:11, 9:13, 10:17, 11:21, 11:23, 18:21, 23:4, 23:20, 23:22, 26:8, 27:11, 29:9, 30:23, 31:14, 31:15
**vibrant** [1] - 21:11
**victory** [1] - 22:4
**view** [1] - 37:9
**Vines** [1] - 17:11
**VINSON** [1] - 1:13
**violating** [1] - 32:5
**violation** [4] - 26:10, 33:7, 33:8, 33:10
**Virginia** [6] - 28:18, 28:21, 33:22, 33:23, 35:19, 35:25
**vis** [2] - 9:13
**vis-a-vis** [1] - 9:13
**VS** [1] - 1:5

## W

**wage** [1] - 18:24
**waged** [1] - 18:8
**walk** [2] - 39:19, 44:15
**walking** [1] - 44:20
**wall** [3] - 37:16, 37:17, 38:3
**wants** [3] - 11:7, 39:20, 44:15
**war** [1] - 18:8
**wars** [1] - 18:25
**weeks** [3] - 4:14, 4:16, 10:8
**weigh** [1] - 17:9
**weighed** [1] - 17:16
**welcome** [1] - 3:9
**West** [6] - 28:18, 28:21, 33:22, 33:23, 35:19, 35:25
**whereas** [1] - 23:3
**whole** [1] - 44:24
**WILLIAMS** [1] - 1:4
**Williams** [1] - 3:1
**win** [2] - 20:6, 22:16
**withdraw** [1] - 20:9
**withdrawal** [1] - 31:10
**won** [1] - 22:5
**worded** [1] - 17:1
**wording** [3] - 8:15, 15:13, 16:21
**words** [2] - 14:24, 32:22
**works** [1] - 37:10
**worry** [1] - 9:12
**Wright's** [1] - 12:14
**write** [1] - 43:2
**writings** [1] - 3:20
**Writs** [1] - 4:22

**wrongful** [1] - 22:2
**wrote** [5] - 7:22, 12:24, 15:12, 16:24, 44:17

## Y

**year** [1] - 18:8
**years** [1] - 40:12
**Yeates** [6] - 1:13, 3:4, 4:24, 6:10, 9:9, 42:1
**YEATES** [29] - 3:4, 3:7, 3:18, 3:21, 3:23, 4:2, 4:9, 4:13, 5:4, 6:14, 6:17, 8:21, 9:1, 9:14, 9:17, 10:3, 10:24, 13:10, 13:14, 13:19, 13:21, 14:24, 15:2, 15:8, 15:10, 16:11, 17:22, 42:3, 43:14
**Yeates'** [1] - 23:12
**York** [6] - 29:1, 29:8, 29:11, 30:3, 30:4, 30:5